1820.
Lyle
v.
Rodgers.

## LYLE *et al.* v. RODGERS.

Where claims against a party, both in his own right, and in a repre-
sentative character, are submitted to the award of arbitrators, it is
a valid objection to the award, that it does not precisely distinguish
between moneys which are to be paid by him in his representative
character, and those for which he is personally bound.

An award may be void in part, and good for the residue. But if the
part which is void be so connected with the rest as to affect the jus-
tice of the case between the parties, the whole is void.

ERROR to the Circuit Court for the district of Co-
lumbia.

This was an action of debt against the defend-
ant, on a bond given by Jerusha Dennison, and the
defendant, to the plaintiffs, with a condition to per-
form the award of certain persons chosen to arbitrate
all differences, &c. between the plaintiffs and Jeru-
sha Dennison, either as administratrix of Gideon
Dennison, deceased, or in any other capacity. The
condition of the obligation is in these words: "Where-
as the said Jerusha Dennison, and the said James
Lyle and Joshua B. Bond, have agreed to refer all
matters in dispute between them, to the award and
arbitrament of David Winchester and Thomas Te-
nant, of the city of Baltimore; and in case they differ
in opinion, then to them and such third person as
the said David Winchester and Thomas Tenant
shall choose and appoint. Now, the condition
of the obligation is such, that if the above bound
Jerusha Dennison, her heirs, executors and adminis-
trators, do, and shall well and truly stand to, abide
by, and keep the award and arbitrament of the said

David Winchester and Thomas Tenant, arbiters, indifferently named and appointed by them to arbitrate, award, and adjudge of, and concerning all actions and causes of actions, debts, dues, controversies, claims or demands whatsoever, both at law and in equity, which the said James Lyle and Joshua B. Bond have, or either of them hath, against her the said Jerusha Dennison, as administratrix of Gideon Dennison, or in any other capacity. Or in case the said arbitrators shall differ in opinion, if then the said Jerusha Dennison, her heirs, executors and administrators, and every of them, do, and shall stand to, abide by, perform and keep the award and arbitrament of them the said David Winchester and Thomas Tenant, or either of them, and of such discreet and indifferent person as they shall elect and appoint as a third person as aforesaid; then this obligation to be void, and of none effect, otherwise to be and remain in full force and virtue."

Upon this submission, the following award was made: "Whereas certain differences have arisen between Joshua B. Bond and James Lyle, of the city of Philadelphia, in the State of Pennsylvania, of the one part, and Jerusha Dennison, of Harford county, in the State of Maryland, of the other part; and whereas, for the purpose of putting an end to the said differences, the said parties, by their several bonds, bearing date the fifteenth day of November last past, have reciprocally become bound, each to the other, in the penal sum of 12,000 dollars, current money of the United States, to stand to, abide by, perform, and keep the award of David Winches-

ter and Thomas Tenant, arbiters indifferently named and appointed to arbitrate, adjudge, and award of, and concerning all actions, or causes of actions, debts, dues or demands, whatsoever, both of law and in equity, which the said Joshua B. Bond, and James Lyle, or either of them, have against the said Jerusha Dennison, as administratrix of Gideon Dennison, or in any other capacity:

"Whereupon, we, the above named arbitrators, after having heard the allegations of the parties, proceeded to an examination of the accounts, documents and proofs, by them respectively produced, and having maturely considered the same, do, adjudge and award in manner and form following:

"First. We do adjudge and award, that there is due from Jerusha Dennison to Joshua B. Bond and James Lyle, the sum of 8,726 dollars and 41 cents, with interest from this date, until paid; upon the payment whereof, all suits at law and in equity, between them, shall cease and determine. And,

"Second. We do adjudge and award, that upon the payment by the said Jerusha Dennison, of the sum above awarded, with interest, as aforesaid, the said Joshua B. Bond and James Lyle shall execute to the said Jerusha Dennison, a good and sufficient release of all claims against her, both in her private capacity, and as administratrix of the late Gideon Dennison; and, also, that they shall re-convey, or release, as the case may require, all lands heretofore conveyed or pledged to them by the late Gideon Dennison, as a collateral security; and further, that they shall deli-

1820.

Lyle
v.
Rodgers.

ver to the said Jerusha Dennison, or account for on oath, all bonds, notes, bills, or other securities heretofore given to them by the late Gideon Dennison, as collateral security:—And,

" Lastly. We do adjudge and award, that this award shall be conclusive between the parties."

The sum awarded by the arbitrators not having been paid, this suit was instituted. The defendant, after praying oyer of the bond, and of the condition, pleaded no award. The plaintiffs, in their replication, set forth the award, and assigned as a breach of it, the non-payment of the sum of 8,726 dollars and 46 cents, with interest, awarded to be due to them from the said Jerusha Dennison. The defendant rejoined, that among the matters in dispute between the parties, was a dispute relating to certain lands conveyed in fee simple by Gideon Dennison, the intestate of the said Jerusha Dennison, to the plaintiffs, in his lifetime, without any condition or defeazance expressed therein, but with an understanding and agreement between them, that the same should be held by the plaintiffs as a collateral security for the payment of whatever debt was due from the said Gideon Dennison to the plaintiffs. And, also, as to certain other lands and land titles, pledged in like manner as a collateral security for the said debt. But because the said matters in dispute are left unsettled by the said award, and for other causes appearing on the face of the said submission and award, the arbitrators made thereon no award, &c.

To this rejoinder the plaintiffs demurred, and the defendants joined in demurrer. It was, however,

afterwards agreed between the parties, that instead of arguing the demurrer, the matter contained in the foregoing pleadings, and the law arising thereon, should be subject to the opinion of the Court, on a statement of facts made by the parties, and the questions stated as arising thereon.

This statement admits the submission, the appearance of the parties before the arbitrators, the award, due notice thereof, a demand of the sum awarded to be due, and a refusal to pay the same. The statement also contains certain letters which passed between the plaintiffs and Jerusha Dennison, and Samuel Hughes, acting for and in behalf of the said Jerusha, dated in 1799 and 1800; and, also, a letter from the plaintiffs, dated in 1800, addressed to Mr. Hollingsworth, a lawyer of Baltimore, containing a copy of the correspondence above mentioned, and transmitting him a note for 5,568 dollars, drawn by Gideon Dennison in his lifetime, of which the plaintiffs were holders, and which had been regularly protested. On this note, Mr. Hollingsworth was requested to take the proper means to obtain payment. The correspondence admitted, that " grants of lands in North Carolina and Tennessee had been given as security, without any acknowledgment or receipt for the same;" but contained no information whatever, ascertaining what grants were so given, although full information on that subject had been requested on the part of Jerusha Dennison.

Mr. *Jones*, for the plaintiffs, stated, 1. That the first objection made to the award by the defendant was,

that the arbitrators had not determined all the matters in controversy between the parties. But the only evidence to support this allegation is inadmissible and insufficient for that purpose ; and the arbitrators have done enough if they decide all that the parties submit to them. 2. It is also objected, that the administratrix could not submit differences relative to her intestate's estate to arbitration. But the right of executors and administrators to submit to arbitration is well established by authorities, and the submission is an admission of assets to the extent which may be awarded ; or, rather, it is a personal engagement to pay whatever the arbitrators may direct, without regard to the question of assets.[a] 3. But it is again objected, that the award is void for uncertainty. To which it is answered, that the universality of the award is advantageous to the defendant, and that a general release, such as the award contemplates, is the best release for him. In the old cases, the judges employed all their astuteness to defeat awards; but in the progress of society, they have been justly viewed with more favour, and many things are now deemed certain which were formerly considered incurably bad. It is not necessary that every thing should be stated with positive certainty in the award itself. It may be rendered certain by reference *aliunde.* The question is, whether the party has a certain and definite remedy. Here the defendant may show that certain deeds have been executed, and are not released. It is sufficiently certain

a Barry v. Rush, 1 *T. R.* 691. Pearson v. Pearson, 5 *T. R.* 6.

what bonds, &c. may be delivered up. It is within the knowledge of the parties. If the plaintiffs should attempt to sue upon other securities, the award might be pleaded in bar, with an averment that they were meant to be included.[a] As to the alternative part of the award, to deliver up the papers, *or* account for them on oath ; an alternative award is good, if certain.[b] This is sufficiently certain. They shall deliver them up, or disclose where they are. Why might not the arbitrators direct the bonds, &c. to be accounted for on oath, instead of being actually delivered up ?

Mr. *Pinkney* and Mr. *Key*, contra, contended, 1. That the award was of a controversy about lands, which the administratrix, in her representative character, was not competent to submit to arbitration. That this was the nature of the controversy appears from the letters offered in evidence, which are competent evidence of what was in dispute. It appears also from the award itself. But this award is no proof of assets. That question was referred to the arbitrators. If they say the money shall be paid, it finds assets; otherwise, if they only decide that so much is due. But they have not decided either, as to J. Dennison in her representative character. 2. The award finds a sum due from J. Dennison, but does not say that she shall pay it. Now, the arbitrators may have intended merely to liquidate the claim, leaving it to her to pay it or not, as she might, or might

a *Kyd on Awards*, 205, and the cases there cited.
b *Id.* 203.

not be satisfied with the restoration by the plaintiffs of the property pledged. The Court will not intend that it was meant that she should pay, whether they offered to restore the pledges or not. And even if this were doubtful, it adds another objection upon the ground of uncertainty. 3. There are several other uncertainties. It is uncertain *what* "lands" are meant: and they are to be reconveyed or released "as the case may require." Who is to judge what the case may require? If the arbitrators had said who should judge, it would even then be void; for it is a judicial act which they could not delegate to any one.[a] The lands are to be "released." But to whom? The award does not state. They are to deliver "*all* bonds," &c. heretofore given to them by the late G. Dennison as collateral security." But they are not specified, and this is a fatal defect.[b] Again; They are required to deliver them, or account for them "on oath." Here it is left uncertain *how* they are to account for them on oath. It is said that it means that they shall disclose where they are. But what good will this do the administratrix, if she does not get them? If the plaintiffs knew where the securities were, the arbitrators ought to have compelled their production. If they do not know, what good will their oath do us? But perhaps it may be said, that it means that they shall account on oath for their value. This, indeed, would be more rea-

a *Kyd on Awards*, 127.

b Pope v. Brett, 2 *Saund.* 292. Ross v. Hodges, 1 *Ld. Raym.* 234.

Lyle
v.
Rodgers.

sonable, than merely telling us where they were: and if this was the intention of the arbitrators, they ought to have valued them, and could delegate this power to no other person, much less to a party. Suppose it to mean either, the award is void. And it is void for uncertainty, because it may mean either. It is admitted, on the other side, that an award must be certain on its face, or refer to something by which it may be made certain. Now this award is full of uncertainties on its face, and refers to nothing by which they can be explained. It is said that it refers us to a knowledge of the parties. But that is not sufficient. The case cited from Lord Raymond,[a] was between mortgagor and mortgagee, who may be presumed to know, and there was no dispute as to facts: but here it is the case of an administratrix who did not know, and a part of the dispute was what was pledged. All these uncertainties are left to be determined by the plaintiffs, who are to return whatever they may choose. But we have the same right to the pledges which they have to the debt, and the value or amount of neither should be left to the parties. Suppose the award had been, that one party should return all the pledges, and the other should pay all the money borrowed. Here would have been the same uncertainty, but it would have been reciprocal: and if an award that one party should pay all that was lent, or account on oath for all that was lent, would be a nullity; an award that the other party shall return all the pledges, or account for them .

a *Ld. Raym.* 234.

1820.

Lyle
v.
Rodgers.

on oath, is equally void. The rules relative to awards have been derived from the civil law, and that law deems them void upon the same ground of uncertainty.[a] This award decides nothing, or what is the same thing, it decides what was unimportant, and leaves all that was material to be taken *ad referendam.* It does not state in what character J. Dennison is indebted to the plaintiffs. The award ought to show the character in which she is chargeable. It is impossible to charge the debt on the estate. If this award had been against her in her representative character, and it had simply declared a debt due from her intestate, specifying the amount, she might have pleaded *plene administravit.* Otherwise, if it had declared that she should pay a certain sum. But it has done neither, and the award is, therefore, void for uncertainty. The great object of the arbitration was, to ascertain what deeds were in fact mortgages, though purporting to be absolute conveyances; and what bonds, &c. were pledged, the plaintiffs not having admitted them. It was designed to ascertain the doubtful equitable circumstances of the case; every thing, in short, which the arbitrators have forborne to decide. The award recognises the existence of these conveyances and pledges, but does not ascertain them, nor provide any mode of ascertaining them. It was not general, but specific relief, which was expected from the award. We admit that an alternative award is valid, if entirely good; but if either branch of the alternative be bad, the whole is

a *Dig. l.* 4. *t.* 8. *s.* 21. *n.* 3.

1820.

Lyle
v.
Rodgers.

void.[a]   The award here does not entitle the administratrix to a disclosure on oath.   If the plaintiffs adopted the alternative of delivering up the securities, they were not to perform the other, that is, to take the oath.   The acts were not conjunctive, but disjunctive ; and one part being void, the whole is, void.   The same argument applies to other parts of the award.   There is an intimate connexion between those which are certain, (if there are any such,) and those which are uncertain.   The whole is, therefore, void.

Mr. *Hopkinson*, in reply, argued, that all the objections to the award in this case were merely technical.   It was not attempted to impeach it upon the ground of partiality or misconduct in the arbitrators; nor could it be denied, that the debt liquidated by it was justly due to the plaintiffs.   As to the objection that administrators and executors have no power to submit to arbitration the title to lands, it does not appear by the submission bond that the title to any lands was in dispute, or was submitted.   No question as to lands ever came before the arbitrators.   And if the arbitrators had awarded as to lands, it might be rejected as surplusage.   The alternatives of reconveying or releasing, as the case might require, the lands pledged, would be determined in each particular case, by the fact, whether the conveyance was absolute on its face or conditional.   If the former, then it was to be reconveyed; if the latter, it

---

[a] 2 *Saund.* 292.   Sergeant Williams' Note.

was to be released. But it is said, that the arbitrators ought to have distinguished the character in which J. Dennison was indebted. This was unnecessary, as she had assumed the whole liability upon herself in her individual capacity. In the bond she has bound herself personally to perform the award, and she has mixed her individual accounts with those of the estate. *Non constat*, that any part of the debt is due from the estate. The award to reconvey all lands, and to return all bonds, &c. pledged as collateral security, is good; because the arbitrators could not tell what lands were conveyed as collateral security, nor what bonds, &c. were pledged for the same purpose. Both were within the knowledge of the parties, and neither were within the knowledge of the arbitrators. It is denied that if one part of the alternative, as to the securities, is void, the other is so. We do not contend that the arbitrators have decided what was not submitted to them; but we say it was not submitted to them to determine what conveyances were made as pledges, and what were absolute on the face of them. The award is good unless the arbitrators were bound to give a list of the conveyances and security. This they could not do, because they had no means of ascertaining them specifically. But they ascertain them sufficiently by classification, which it is in the power of the parties to apply to each individual case.

Mr. Chief Justice MARSHALL delivered the opinion of the Court. The questions submitted to the

Court on the statement of facts made by the parties were, 1st., " Whether the said letters so offered by the defendants, or any of them, are competent and sufficient evidence to prove what matters of dispute or controversy were submitted to the said arbitrators under the said bond ?"

2d. " Whether the said award in the terms aforesaid, or taken in connexion with the evidence so offered by the defendant, (if such evidence be decided by the Court to be competent and admissible,) is valid, and sufficient in law ?"

The letters offered by the defendant were competent evidence to prove that a dispute existed respecting the lands mentioned in the letters, which dispute was brought before the arbitrators.

The matter contained in the letters was pleaded by the defendant in his rejoinder, as being part of the subject in controversy, and is, consequently, confessed by the demurrer. Had the demurrer been argued, therefore, the first question could not have arisen. But as a statement of facts has been substituted for the demurrer, we presume, the question respecting the admissibility of the evidence offered by the defendant is to be considered as if issue had been joined on the fact stated in the rejoinder. So considering it, there is, we think, no doubt of the admissibility of the testimony, nor of its competency, taken in connexion with the award itself, to prove, that a dispute existed respecting the lands mentioned in those letters, which was brought before the arbitrators.

Defect in the award in omitting to state whether the sum due from J. D. was due in her own right, or in her representative character.

We proceed to the second question, which respects the validity of the award.

The first exception taken to this award is, that it omits to state, whether the sum due from Jerusha Dennison, was due from her in her own right, or as

administratrix of Gideon Dennison. The claims upon her in both characters, are submitted to the referees; and they ought to have decided upon all, and to have distinguished between those which she was required to pay in her representative character, and those for which she was bound personally. Had this case been depending in Chancery, where alone the two claims could have been united in one suit, the Chancellor would unquestionably have discriminated between them ; and would, in his decree, have ascertained in what character the whole sum was to be paid, or how much was to be paid in each. If this award was made against Mrs. Dennison as administratrix, she would not only be deprived by its form, of the right to plead a full administration, (a defence which might have been made before the arbitrators, and on which their award does not show certainly, that they have decided,) but also of the right to use it in the settlement of her accounts as conclusive evidence, that the money was paid in her representative character If this objection to the award is to be overruled, it must be on the supposition, that it is made against her personally ; yet the statement of facts shows the claim against her to be in her representative character. There is certainly a want of precision in this part of the award, which exposes it to solid objection, and might subject Mrs. Dennison to serious inconvenience.

The second exception to which the Court will advert, affects still more deeply the merits of the award, as well as its justice.

It is apparent from the pleadings in the cause,

Second defect in the award.

from the facts stated, and from the award itself, that titles to land were deposited by Gideon Dennison, in his life time, with the plaintiffs, as collateral security for the debt claimed by them; and that the conveyances purported to be absolute. Not only was there uncertainty as to the right of redemption; but it was, so far as the Court can discover, absolutely uncertain what lands had been so conveyed.

This subject appears to have been brought before the arbitrators, and they have awarded upon it. Is their award sufficiently certain to give Jerusha Dennison the benefit they intended her? They have awarded " that the said Joshua B. Bond and James Lyle, shall reconvey or release as the case may require, all lands heretofore conveyed or pledged to them, by the late Gideon Dennison, as a collateral security." The award does not determine what lands were so conveyed. If the arbitrators had directed that all the lands conveyed or pledged by Gideon Dennison should be reconveyed, there would have been some difficulty in ascertaining what lands had been conveyed or pledged, from the uncertainty where deeds might have been recorded, and whether grants might not have been deposited without a conveyance; but they have directed that those lands only shall be reconveyed, which had been conveyed or pledged as collateral security. No one of these deeds exhibited on its face any mark of its being made as a collateral security. The question, whether a conveyance was absolute, or as a security only, was a material question, which ought to have been decided by the arbitrators. They have not de-

cided it, but have left it open to be decided by the parties themselves, or by some other tribunal. This is a very important part of the award, and with respect to this subject, it is incomplete. It is obviously as uncertain now, as it was before the award was made, what lands had been conveyed or pledged to Gideon Dennison as collateral security. This part of the award then is void, and the question is, whether that part which directs the payment of money be void also?

That an award may be void in part, and good for the residue, will be readily admitted; but if that part which is void be so connected with the rest as to affect the justice of the case between the parties, the whole is void.[a] There is great good sense in this distinction. If A. be directed to pay B. $100, and also to do some other act not well enough defined to be obligatory, there is no reason why B. should not have his $100, because he cannot also get that other thing which was intended for him. But if A. be directed to pay B. $100, and B. to do something for the benefit of A., which is not so defined as to enable A. to obtain it, there is much reason why A. should not pay the $100; since he cannot obtain that which the arbitrators as much intended he should receive, as that he should pay the sum awarded against him.

The cause in 2 *Saunders*, 292, is in point. In that case the arbitrators awarded, that William Pope

*That part of the award which is void for uncertainty, being so connected with the rest as to affect the justice of the case between the parties, the whole is void*

a *Kyd*, 246.

should be satisfied and paid by John Brett, the money due and payable to the said William Pope, as well for task work as for day work, and then the said William should pay to the said John the sum of £25 lawful money of England. Mutual releases were also awarded.

It was admitted that so much of the award as directed payment to be made for task work and day work, was void for uncertainty, inasmuch as the arbitrator had not ascertained how much was to be paid on those accounts; but it was contended that the award was good for the residue, inasmuch as enough remained to make it mutual. But the Court said, " that if the clause of task work and day work be void, as it is admitted to be, the whole award is void, for it appears that William Pope was awarded to pay the £25, and to give a general release, upon a supposition by the arbitrator, that he should be paid the task work and day work by virtue of that award; and that not being so, it was not the intention of the arbitrators, as appears by the award itself, that he should pay the money, and give a general release, and yet receive nothing for the task work and day work, as by reason of the uncertainty of the award in that part he could not."

The application of this case to that under consideration is complete. The award to reconvey all lands heretofore conveyed or pledged to the plaintiffs by Gideon Dennison, in his life time, as collateral security, is as uncertain as the award to pay for task work and day work already performed; it was as much

the intention of the arbitrators that the parts of their award which were favourable to the different parties should be dependent on each other in this case, as in the case of Pope v. Brett. The arbitrators never could have designed that Bond and Lyle should get their money, and retain their deposits.

In his note upon this case, Sergeant Williams says, " If by the nullity of the award in any part, one of the parties cannot have the advantage intended him as a recompense or consideration, for that which he is to do to the other, the award is void in the whole."

This just principle must always remain a part of the law of awards.

The objection to the part of the award which has been considered, applies equally to that part of it which respects bonds, notes, bills, or other securities.

Judgment affirmed.