Allen, J.
said—The action of John Martin against Stephen Martin was brought to recover three slaves, one a female. The case was referred to arbitrators, who awarded to the plaintiff the three slaves named in the writ and declaration, and two other infant slaves, children of the female born after the institution of the action. The order of reference under which the arbitrators proceeded, referred all matters in difference in the suit. It is contended, that the arbitrators were limited by the terms of the submission to those matters which could have been passed upon by the verdict of the jury, if the case had gone to trial; and if so, the plaintiff must shew that this increase of the female slave could have been recovered in that action, otherwise the arbitrators have exceeded their authority.
The action of detinue is little used in England: the defendant was entitled to his wager of law; in consequence of which, it has seldom been resorted to in mo *500 dern times, and the decisions of the courts in the action are very scant. The importance of slave property has led to the revival of the action with us, and it has become a convenient and valuable remedy. The damages recovered in an action of trovei', the substitute for detinue in England, would furnish no adequate remedy in respect to this species of property; for, owing to the attachment springing up between master and slave, no damages would compensate for the loss. In reviving this obsolete action, and adopting it as a remedy in this particular case, we use it for the assertion of a right unknown to the common law. The title of masters to slaves rests upon the municipal law of our own state. The rights and duties of owners, the mode of acquiring and transmitting title, all depend upon our own statutes, which (for this purpose) axe Virginia common law. One pxinciple of law respecting this property, is, that as a general rule, the issue follows the condition of the mother. Indeed, the rule may be considered as universal : I can hardly imagine a case which would form an exception to it. The case of a gift of the mother by will, and of the issue thereafter to be born, to a different person, is supposed to constitute an exception. It has never been decided that such a gift of the afterborn issue is valid; and it would seem to be inconsistent with the previous absolute donation of the mother. But be that as it may, it would form an exception (and one of rare occurrence) to the general rule, that he who shewed title to the mother, thereby shewed title to the issue; that one follows as an incident to the other, and that the establishment of right to the one, concludes the title to the other, except in the possible case above alluded to, or where there has been an alienation of the issue after the title thereto had accrued. Such being the law as to the rights of the owner, and there being no statutory remedy for the assertion of these rights, the courts were called on to furnish one: and the obsolete action of de *501 tinue was revived, and adopted for this purpose. The right being ascertained and regulated by law, cannot be altered or impaired by judicial decision. But, it seems to me, the court is by no means transcending its authority, when it moulds and adapts the remedy so as to be adequate to the assertion of the right. This, indeed, constitutes one of the peculiar excellencies of the common law. While rights are held inviolate, remedies may be modified and regulated so as to conform to the changing condition of society. If no change could be made in the application of remedies to the ever varying and expanding relations of men in an improving community, without legislative enactment, society would, move in trammels, and the courts be always behind the age. Accordingly, we find that while the forms of action have continued unchanged, there is scarcely one which has not undergone modifications to adapt it to the changed condition of society. In regard to this very subject, we have a striking illustration of this proposition. There was no form of action known to the common law, by which the right to freedom could be tried. The laws upon the subject of villenage had no application to the condition of slaves in Virginia. Our courts, without any legislation, have moulded the ordinary action of trespass for false imprisonment, in form an action to recover damages for a tort, into a suit to try the right to freedom. Where is the incompatibility of moulding the action of detinue so as to render it adequate to the purposes to which it is applied ? The argument ah inconvenienti, if a different practice should prevail, is entitled to some weight. .Humanity dictates that the child should not be separated from the mother; and where the right to one, is determined by the adjudication of the question as to the other, why should the plaintiff, having recovered the parent, be turned round to a new suit to recover the child ? Again; the owner being out of possession may not know, and has no means *502 of ascertaining, the names of the issue, or the times of their birth. The controversy may be protracted; and if the possession is adverse, and has continued for five years, the title is perfect. Such adverse possession must commence at the moment the child comes into being: and, unless the real owner has in every instance instituted a new action for the increase, within the five years, his right will be barred. This would be holding out inducements to' wrongdoers to protract such controversies, with the hope of securing a title to the increase.
It is supposed, that if the jury should include the increase, the defendant might be surprised by evidence touching their value, of which no notice was given by the pleadings. This in practice could be easily obviated, by requiring the plaintiff to file a specification of the children born after the institution of the suit, before the trial. The courts too, by granting new trials, could always guard against any injustice from surprise.
It is said, if the afterborn children may be recovered, then, if the plaintiff, through ignorance of the existence of such children, neglects to give evidence of such fact, his right may be lost. I do not think so. In many cases, though the plaintiff might have blended distinct claims together in the same action, his failure to do so will not preclude a recovery in another suit for a claim of which no evidence was given in the first action. The action of assumpsit presents a familiar illustration of this rule. So, if the afterborn children should die before trial, the same rule which governed in the case of Austin’s ex’or v. Jones, Gilm. 341. would apply: for such issue the jury would probably allow nothing.
For the reasons before indicated, direct authority could not be expected in any of the english cases. But, in adopting the action of detinue for the assertion of this right, the courts have availed themselves of a form of action which did admit anomalies, when viewed with reference to the strict rules of pleading, which distin *503 guish it from other actions, and, in effect, justify the modification here proposed. According to the old authorities, the defendant may plead in this action, that the goods were delivered to him by the plaintiff and A. cequa manu, upon a condition which he knew was not performed, and pray that A. be garnished. So, if A. bails goods of C. to tí. in detinue by C. against B. he may plead bailment by A. to be redelivered to him, and pray that he may be garnished. 6 Com. Dig. Pleader. 2 X 9. p. 405-6. Upon this plea a scire facias issued against the garnishee : if he appeared and interpleaded, and the plaintiff succeeded, he had judgment against the original defendant for the recovery of the thing detained, and for his damages, though these could not exceed the amount laid in the declaration; and he might also recover damages against the garnishee for the delay after the writ purchased, and these damages might exceed those laid in the declaration, for (as it is said) it was not against him. Id. 2 X 12. 1 Roll. Abr. 578. Pilford’s case, 10 Co. 117. Ld. Ellenborough’s opinion in Ushur v. Dunsey, 4 Mau. & Selw. 99. See too, 1 Roll. Abr. 578. Bro. Abr. 227. 8 Vin. Abr. Detinue. D 6. p. 38. Here, then, is an instance in this action, where a departure was allowed from all the rules of pleading applicable to other personal actions. A stranger not named in the writ or declaration, was brought into the case; if he interpleaded, the suit proceeded against both, and judgment was rendered against both. The action therefore did admit of one essentia] difference from all others. And when revived in this country, and adapted to the assertion of a right to property in slaves, is it more incongruous to admit it to be so moulded as to be an adequate remedy, than it was to permit this interpleader and judgment against a third person ?
By the old common law, the writ of replevin was resorted to, for the redelivery and recovery of the specific chattel • a remedy, in some respects, more effectual than *504 the action of detinue. The gist of the action was the tortious taking. Vaiden v. Bell, 3 Rand. 448. Pangburn v. Patridge, 7 Johns. Rep. 140. Marshall v. Davis, 1 Wend. 109. In the last case, it was held, that replevin would not lie unless the taking was tortious. In F. N. B. 69. it is said, “A man shall have a replevin of divers cattle that are taken; and if a man take divers cows or sheep, and afterwards they have calves or lambs, the plaintiif shall have his replevin of them all, as well as of the cows and sheep which were taken.” And in a note to this passage it is said, “ Where, on the issue that he did not take, and the special matter found, it shall be adjudged for the plaintiif.” This, though not directly in point, is a strong authority in support of the view I take of the case under consideration. When Pitzherbert wrote, the rules of special pleading were rigorously enforced. The tortious taking, we perceive, in an action of replevin was the gist of the action. Unless the plaintiif made that out, he failed. But in the case put, where there had been increase from the cows and sheep after the taking, though the tortious taking could not be predicated of such after increase, yet upon the special matter being found, the plaintiif had judgment. As to the increase an exception was made. So here, though regularly a plaintiif may not be permitted to recover more than he declares for,• in this particular case, and in this form of action, shewn in other respects to have admitted of essential departures from the ordinary rules of pleading, it seems to me, the increase may be recovered; that the analogies of the law justify such a modification of the action; and that substantial justice will be promoted by allowing it.
There is another view of this particular case, which, perhaps, would justify the award; though I have not fully satisfied myself as to this point. There would be no doubt of the right of a court of equity, in a proper case, to give a decree for the increase of slaves, born du *505 ring the pendency of the suit. The arbitrators are a domestic tribunal, selected by the parties. The title to the slaves named was in controversy; that controversy embraced, and the settlement concluded, the title to the increase. The parties appeared, and there is no allegation that the defendant was surprised by the arbitrators considering a matter not embraced in the submission. They were an equitable tribunal. By their award they have gone no further, than (if 1 am correct) a court of equity would have gone. The objection to the power of the court of law to render judgment for such increase, is technical: the arbitrators were bound by no such formal rules. And as the controversy submitted to their decision, did, in effect, embrace the increase, as well as the mother, it seems to me, they were justified in including all in their award.
But on the first ground, I think the increase might have been recovered in detinue; and 1 am, therefore, for affirming the judgment.
Stanard, J.
It was objected, that the arbitrators exceeded their authority in awarding the issue born after the institution of the suit, and that the judgment is erroneous in sanctioning the award. If the objection is well founded, it will not avoid the award as to the matters confessedly within the submission. It was an excess easily severable from the matter which was submitted; and the court in giving judgment on the award should have rejected the excess, and sustained it so far as it was within the submission. Lyle v. Rodgers, 5 Wheat. 394. 409. Cargey v. Aitcheson, 13 Price 639. S. C. 2 Barn. &. Cress. 170. 2 Bing. 199. 9 Eng. C. L. R. 52. 380.
Upon the question whether the objection is well founded or not, after the most careful consideration of it, and of the argument upon it, I think the objection must he sustained. The matter in difference in the ac *506 tion of detinue demanding three slaves by name, was re^erre(^to the arbitrators: their authority did not extend beyond the matter in difference in that action. Whatever was recoverable hr that suit, had it proceeded to trial and judgment in the ordinary course, constituted the matter in difference, and every thing not so recoverable was extrinsic to the case, as to which evidence would have been inadmissible at the trial, and judgment would have been extrajudicial and erroneous. The question, then, is resolvable into this: could the increase of the female slave born pending the action of detinue for the mother, have been recovered, if the case had proceeded to trial, verdict and judgment? The well informed counsel for the defendant in error, seeing that this was probably the equivalent question, maintained the affirmative, on the ground that the increase is but a mere incident, like interest on principal money, or profits of property detained. This argument from analogy, though most ingeniously urged, I think is not sound. To hold it so, might in this case subserve the purposes of justice, but would lead to very different results if established as a general proposition. If it be established that the increase of slaves is like interest or profits, and on that analogy the recovery of the increase be allowed in this action, then the principle would apply in a case where; the increase not being recovered in the action for the parent, a subsequent action shall be brought for the increase. If in a suit for money or property, in which interest or profits are recoverable as incidental to or accessories of the principal subject, such interest or profits be not recovered, no new action can be brought for them; and, if the increase of slaves born pending a suit for the parents, be considered incidents or accessories of the principal subject claimed in the pleadings, a subsequent suit for such increase would be equally inadmissible. The consequence would be, that the true owner, suing for and recovering the parent, and *507 ignorant or not having proof of the fact of increase pending his suit, would lose his remedy for the increase. And cases in which the plaintiff may be ignorant of the fact of such increase having been born, or may want proof of it, will, probably, be of much more frequent occurrence than those in which his information and proof will enable him to recover them. Again, to hold that such increase is recoverable in the action for the parent, might lead to surprise and injustice. The defendant has no warning that the plaintiff alleges the birth or existence of such increase ; and the plaintiff may introduce evidence as to this matter, of which the pleadings have given the defendant no notice, and by mistake or fraud make proof of increase that never existed or had ceased to exist. And in respect to the increase which had been bom but had died, what would be the rights of the parties ? Much embarrassment might arise from the application of the principle of Austin's ex’or v. Jones, Gilm. 341. where judgment was given for the plaintiff, though it was ascertained by the verdict of the jury, that the slave was dead. In one view of that case, if the increase born pending the suit is to be considered as part of the subject embraced and recoverable in the suit, then its death pendente lite would not exempt the defendant from a recovery of its value. In another view, the argument of judge Roane in that case goes far to sustain the propriety of excluding the proof that there was such increase, and consequently of denying the right of recovery: he intimated, that the defendant might have protected himself by pleading puis darrein continuance, because such plea would have put the allegation of the fact of the death of the slave on the record, and that would have let in proof of it. If the death cannot be proved to exonerate the defendant from the charge for the slave that may have died, unless that fact be pleaded in the ordinary course, proof of the birth not stated in the pleadings should not be let in to increase the charge.
*508 My opinion is, therefore, that the arbitrators, so far as their award embraced the increase of the female slave born pending the suit, exceeded their authority; that to that extent the court below ought to have rejected the award, and should have given judgment upon it in like manner as if it had said nothing about the increase; and that this court, reversing the judgment, should render such judgment as that court ought to have rendered.
Cabell, J. concurred in the opinion of judge Allen, and Brooke, J. concurred in that of judge Stanard.
And the judges of this court being equally divided in opinion, therefore, the judgment was affirmed.