CARHAL FACTORS, INC., ASSIGNEE, PLAINTIFF-RESPOND-
ENT, v. LEON SALKIND, ANNE SALKIND, MAX MUEHL-
FRIEDEL, HILDEGARDE MUEHLFRIEDEL, HAROLD
BAUM AND MARION BAUM, INDIVIDUALLY, JOINTLY,
SEVERALLY, OR IN THE ALTERNATIVE, AS CO-PART-
NERS TRADING AS LEADING EMBROIDERY COMPANY
AND LEADING HANDKERCHIEF CORPORATION, A COR-
PORATION OF THE STATE OF RHODE ISLAND, DE-
FENDANTS-APPELLANTS.

Argued October 9, 1950—Decided November 6, 1950.

486

Mr. *William Bannon* argued the cause for respondent. Mr. *Charles J. Milton* on the brief (*Messrs. Millon, McNulty & Augelli,* attorneys).

Mr. *Sydney I. Turtz* argued the cause for appellants (*Mr. Theodore Cohen,* attorney).

The opinion of the court was delivered by

CASE, J.   The appeal (*R. S.* 2:40–25) was to the Appellate Division from a money judgment in the amount of $6,451.42 entered in the Superior Court, Law Division, Hudson County, on an award by arbitrators, and is certified to us on our own motion.   Plaintiff, Carhal Factors, Inc., brought an action at law under a complaint containing four counts of which the first and second were against Leon Salkind, Anne Salkind, Max Muehlfriedel, Hildegarde Muehlfriedel, Harold Baum and Marion Baum, individually, jointly, severally, or in the alternative, as co-partners, trading as Leading Embroidery Company, with its principal office at 5719 Hudson Boulevard, North Bergen, New Jersey, on a claim of $7,381.40 with interest, and the third and fourth were against Leading Hand-

kerchief Corporation, a corporation of the State of Rhode Island, on a claim of $604.32 with interest. Answers were filed by the several defendants. Motions were addressed to the answers, and certain defenses were struck. It appeared that plaintiff's assignor was a processing company and did certain processing or finishing for the defendants under a basic contract which contained a paragraph requiring the parties to arbitrate all differences arising therefrom. The court thereupon (*R. S.* 2:40–13, 14) stayed the action "until the further order of this court" and directed the plaintiff and the defendants to "arbitrate the dispute or disputes existing between them in accordance with the terms of the contract annexed to the complaint filed in this cause." The arbitration agreement was:

"Any and all differences arising out of this quotation or any contract arising therefrom or any dyeing or finishing instruction or order accepted under any quotations issued by this company shall be settled by arbitration. * * * Should arbitration be necessary we will select one arbitrator, you will select one arbitrator and those two will select the third arbitrator. Except as hereinafter stated their decision shall be final."

Plaintiff selected one arbitrator, defendants selected another and the arbitrators thus chosen selected a third. The arbitrators sat, heard the parties and received proofs. A stipulation entered into by counsel for the purpose of giving, on the appeal, a statement of some of the proceedings below, recites that "* * * the matters in difference between the parties were heard at some length before the arbitrators. At the beginning of the arbitration, the arbitrators were furnished with one of the pleadings in the previous law action, for the purpose of enabling them to have the correct names of the parties involved in the arbitration. * * * There was evidence before the arbitrators from which the arbitrators could have concluded that the corporate defendant was equitably owned by Leon Salkind and controlled by him. In presenting its counterclaim the defendants made no effort to segregate the damages due the partnership defendants from the dam-

ages due the corporate defendant." The award treated the defendants as a single defendant and throughout referred to "the defendant" as though the parties defending were a single entity and stated the amount of the plaintiff's claim, with interest, as $8,110.79. It stated the sum total of "counter-claims" submitted by the "defendant" as $10,722.08, made up of seven liquidated items which the award considered *seriatim,* in some instances making its finding *pro* or *con* in precise dollars and cents and in other instances indicating its findings by specified yardages at a fixed value per yard, without computing the result. The award carries no total in figures but states the "feeling of the arbitrators that the preceding paragraphs set out in full detail the necessary decisions to settle this dispute promptly." The award was signed by only two of the three arbitrators. The third arbitrator refused to sign. An order was made confirming the award and pursuant to that order the plaintiff took judgment in the amount of $6,451.42 against all of the individual defendants named in the complaint in the law action, severally and as copartners trading as Leading Embroidery Company, choosing, however, to waive as against the corporate defendant and taking no judgment as to it.

Appellants first argue that the arbitrators exceeded and so imperfectly executed their powers that a mutual, final and definite award upon the subject ultimately submitted was not made. The computing of the total amount named in the judgment presents no insurmountable difficulty. It is a mere matter of calculation. The money findings were capable of being reduced to a certainty. But the identity and liability of the judgment debtors is a different matter. The parties to be affected and the manner in which they are to be affected by an award must be made certain. Ordinarily, an award is good as to matters within the submission, *Rogers v. Tatum,* 25 *N. J. L.* 281 (*Sup. Ct.* 1855); *Hoffman v. Westlecraft,* 85 *N. J. L.* 484 (*Sup. Ct.* 1914); but there was no article of submission to the arbitrators. We are told by plaintiff that the contract controls, and that by the contract all differ-

ences were to be submitted. But that generalization, grounded solely in the basic contract, conveys no information as to what the differences were or in what capacities the parties were affected unless we assume that the differences were those set up in the pleadings and that the parties to the arbitration were the parties, with the varying responsibilities, named in the law suit. That the parties to the law suit were in fact the parties to the arbitration appears satisfactorily from the stipulation. The confirmation of the award was by an order in the law action above referred to, proceedings in which had been stayed pending the arbitration. We think that we should interpret the court's order as a rule upon the parties to arbitrate, in accordance with the terms of the agreement, the issues raised by the pleadings. (*R. S.* 2:40–14). This, too, leaves us in uncertainty whether the relative position of the parties or their precise liability for separate items was brought home to the arbitrators. The failure of the defendants to segregate their counterclaims does not, we think, relieve plaintiff from the duty to distinguish, in its proof of debts, between the individuals and the copartnership on the one hand, and the corporation on the other. The stipulation that there was proof from which the equitable ownership of the corporation by Salkind could be deduced does not clear the confusion. Nor does the stipulation that at the beginning of the arbitration "one of the pleadings" was furnished the arbitrators "for the purpose of enabling them to have the correct names of the parties." No one of the pleadings would give the information necessary to a clear view of the matter to be tried out; and the stated purpose of the incident was not that of presenting the matters comprehended by the submission. Proceeding on that assumption, there was a disputed claim of $7,381.40 against six individuals, severally and as partners, and a claim of $604.32 against a foreign corporation. Those, then, were the disputants whom the award classed as a single defendant and against whom it made an inseparable finding which was resolved into a judgment of $6,451.42. The award was a unit and must be understood to have been against all

the defendants. The arbitrators made the mistake, apparent upon the face of the award, of treating the defendants as a single defendant to be charged with the same debts. An award is impeachable if the arbitrators have mistaken a fact and the fact is apparent on the face of the award itself, *Taylor v. Sayre & Peterson*, 24 *N. J. L.* 647 (*Sup. Ct.* 1855); *Held v. Comfort Bus Line, Inc.*, 136 *N. J. L.* 640 (*Sup. Ct.* 1948), and if the award is, in that respect, to be regarded as an excess of power rather than as a mistake it is likewise impeachable, *Leslie v. Leslie*, 50 *N. J. Eq.* 103, 108 (*Ch.* 1892). The award made no findings by which the debt of the corporation was distinguished or distinguishable from the debt of the individuals and the partnership. The fault is not remedied by the act of the plaintiff in omitting the corporation from the judgment. `The omission does not establish that a debt properly owing by the corporation, a separate legal entity, is not wrongfully included in the judgment entered against the remaining defendants. An award which does not clearly fix the identity of a party defendant and the capacity in which he is charged is void for uncertainty. *Hoffman v. Hoffman*, 26 *N. J. L.* 175 (*Sup. Ct.* 1857); *Lyle v. Rodgers*, 5 *Wheat.* 394, 5 *Law Ed.* 117 (*U. S.* 1820). The award was indefinite within the application of *R. S.* 2:40-19(d).

The award was faulty in another respect which, since the case must go back for further proceedings, we stress for the guidance of court and counsel. `Very early in our decisions it was recorded that courts accord great liberality in favor of the validity of arbitration proceedings but that where plain mistake of law or fact appears courts of justice are bound to set them aside, *Moore v. Ewing*, 1 *N. J. L.* 144 (*Sup. Ct.* 1792), a limitation that was somewhat modified by our Court of Errors and Appeals in *Bell v. Price*, 22 *N. J. L.* 578 (1849), *Richardson v. Lanning*, 26 *N. J. L.* 130 (*Sup. Ct.* 1856); *cf. Runyon v. Hodges*, 46 *N. J. L.* 359 (*Sup. Ct.* 1884); *Booye v. Muth*, 69 *N. J. L.* 266 (*E. & A.* 1903). We believe that the law, under the circumstances of the case, requires the award to be signed by all three arbitrators; and

that consequently a fundamental defect, which should be corrected, is apparent on the face of the proceedings. It is the general rule under the common law that when a matter of purely private concern is submitted to the determination of the arbitrators, there must be unanimity of conclusion unless otherwise indicated by the terms of the submission. *City of Omaha v. Omaha Water Co.*, 218 *U. S.* 180, 54 *Law. Ed.* 991 (1910); *Nettleton v. Gridley*, 21 *Conn.* 531, 535 (*Conn. Sup. Ct. of Errors* 1852); *Bannister v. Read*, 6 *Ill.* 92 (*Ill. Sup. Ct.* 1844); *Byard v. Harkrider*, 9 *N. E.* 294 (*Ind. Sup. Ct.* 1886); *Hubbard v. Great Falls Mfg. Co.*, 12 *A.* 878 (*Sup. Jud. Ct. of Maine* 1888); *Washburn v. White*, 84 *N. E.* 106 (*Sup. Jud. Ct. of Mass.* 1908); *Jackson v. Gager*, 5 *Cow.* 383 (*Sup. Ct. of the State of N. Y.* 1826); *Ex parte Rogers*, 7 *Cow.* 526, 529 (*Sup. Ct. of the State of N. Y.* 1827); *Rhodes v. Baird*, 16 *Ohio State* 573 (*Sup. Ct. of Ohio* 1866); *Sherman v. Cobb*, 10 *A.* 591 (*Sup. Ct. of R. I.* 1887); *Sutcliffe v. Pawtucket Amusement Co.*, 155 *A.* 578 (*Sup. Ct. of R. I.* 1931).

It frequently, and perhaps usually, happens that the submission is upon some such provision as that "the reference is to three, so as they, or any two of them, make the report." *E. g., Lutz v. Linthicum*, 8 *Pet.* 165, 8 *Law. Ed.* 904 (*U. S.* 1834). Thus, in *Hoff v. Taylor*, 5 *N. J. L.* 829 (*Sup. Ct.* 1820), the submission was upon the agreement that the report of the three arbitrators "or of any two of them" would be binding. The report was declared invalid because the third arbitrator had not undertaken to act at all, but the view of the court upon the effect of a report by only two where the submission had been to three, without more, may be gathered from the citation, with approval, of *Green v. Miller*, 6 *Johnson* *39 (*Sup. Ct. of the State of N. Y.* 1810). In that case the parties agreed "to submit to five arbitrators and that their award should be binding." All of the arbitrators met and heard the allegations and proofs of the parties, but only four of them agreed to the award. The other arbitrator dissented. It was held that as the submission to arbitrators was a dele-

gation of power, for a mere private purpose, it was necessary for all of the arbitrators to concur in the award, it not having been otherwise provided by the parties.

In *Rogers v. Tatum, supra,* and *Bell (Stoll's Administrator) v. Price,* 21 *N. J. L.* 32 (*Sup. Ct.* 1847), reviewed in 22 *N. J. L.* 578, *supra,* it does not appear what the terms of the submission were with respect to the report, and the decisions do not turn on that question.

In *Hoffman v. Hoffman, supra,* the point was made on demurrer to the declaration that the "declaration states that the award was signed by two only of the arbitrators, and does not aver that the third arbitrator acted." Here, too, the terms of submission are not disclosed; the decision went on the alleged absence of an averment that the third arbitrator did not take upon himself the burthen of the arbitrament and held that while it would need to be shown at the trial that all the arbitrators acted, the fact need not appear upon the face of the award. Absence of the third signature seems to have been considered merely in its bearing upon the assertion that only two arbitrators had acted and not at all upon the question of the sufficiency of the signatures.

In *Reeves v. Goff,* 2 *N. J. L.* 133 (*Sup. Ct.* 1806), "the parties agreed to submit the matters in dispute between them to three men, without the usual clause that the report of any two of them should be binding, &c. Two of these referees only signed the report." The judgment was reversed.

We find nothing in the New Jersey decisions or in our statutes to vary the general rule stated above. The question, then, is whether the agreement that each party would select an arbitrator and that the two so chosen would select the third with the addition of the phrase "Except as hereinafter stated their decision shall be final" indicates an intent that an award by two of the three will suffice. The language is not, in our opinion, susceptible of that construction. The Pennsylvania courts in *Sukonik v. Shapiro,* 333 *Pa.* 289, 5 *A.* 2d 108 (*Pa. Sup. Ct.* 1939), and in *Rosenbaum v. Drucker,* 346 *Pa.* 434, 31 *A.* 2d 117 (*Pa. Sup. Ct.* 1943), reconciled the facts of

those cases to the proposition that a selection of three arbitrators under those facts indicated a purpose that two of the three arbitrators were competent to make the award. We have no helpful facts beyond the wording of the basic agreement; and we consider that the agreement to select three arbitrators and to accept their decision as final is not equivalent to an agreement to receive the decision of two of them as final.

For the reasons stated, the judgment below will be reversed and the record remitted to the Superior Court, Law Division, Hudson County, for further procedure not inconsistent with this opinion; costs to abide the event.

*For reversal*—Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—Chief Justice VANDERBILT, and Justice OLIPHANT—2.