66 N.J. 297 (1975)
331 A.2d 1
ESPEDITO LA STELLA AND JOHN CAFONE, PLAINTIFFS-APPELLANTS,
v.
GARCIA ESTATES, INC., DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued November 6, 1974.
Decided January 21, 1975.
Mr. Robert W. O'Hagan argued the cause for the appellants (Messrs. Stout, O'Hagan & Hertz, attorneys).
Mr. Roland R. Formidoni argued the cause for the respondent (Messrs. McLaughlin, Abbotts & Cooper, attorneys).
The opinion of the Court was delivered by JACOBS, J.
*298 The Appellate Division reversed a Chancery Division judgment which had confirmed an arbitration award. 128 N.J. Super. 173 (1974). We granted certification on the plaintiffs' application. 65 N.J. 568 (1974).
The plaintiffs are tenants of premises leased to them by their landlord the defendant and used as a golf course. In 1971 they sought to exercise a renewal option but the defendant refused to renew on grounds which need not be detailed here. The plaintiffs filed a complaint in the Chancery Division seeking to compel renewal of the lease and the defendant filed an answer and counterclaim in which it set forth, inter alia, the following arbitration clause in the lease:
Any dispute arising under this lease shall be settled by arbitration. The Landlord and Tenant shall each choose an arbitrator, and the two arbitrators thus chosen shall select a third arbitrator. The findings and award of the three arbitrators thus chosen shall be final and binding on the parties hereto.
In its counterclaim the defendant sought judgment directing that arbitration proceed between the parties in the manner provided in their lease and in 1972 Judge McGowan entered judgment to that effect. Thereupon the plaintiffs selected an arbitrator, the defendant selected an arbitrator and these two selected a third arbitrator. The three arbitrators met and, although there were tentative votes in favor of the defendant, ultimately the three arbitrators rendered their final award with two of the arbitrators voting in plaintiffs' favor and the third voting in the defendant's favor. In 1973 Judge McGowan entered a judgment confirming the award in the plaintiffs' favor by the majority arbitrators; he summarily rejected the defendant's contention that no award could lawfully be rendered by the arbitrators without the concurrence of all three of them. The defendant appealed to the Appellate Division which reversed on the ground that unanimity was required by Factors, Inc. v. Salkind, 5 N.J. 485 (1950). In Factors this Court held that an award which *299 was not signed by all of the three arbitrators was fatally defective; in his opinion Justice Case adhered to the common law rule which provided that in private arbitrations "there must be unanimity of conclusion unless otherwise indicated by the terms of the submission." 5 N.J. at 492. We granted certification on the plaintiffs' application in order to reconsider the subject and, after hearing oral argument, we are satisfied that the single issue of merit calling for present consideration and determination is whether the common law rule should not now be abandoned in favor of a rule that a majority determination is sufficient unless otherwise directed by the agreement to arbitrate.
The English common law at the time of the American Revolution was undoubtedly hostile to arbitrations. See Frank, J. in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 983 (2 Cir. 1942), and Hough, J. in United States Asphalt R. Co. v. Trinidad Lake P. Co., 222 F. 1006, 1007 (S.D.N.Y. 1915). Thus it permitted either party to an arbitration of an existing dispute to withdraw at any time before the actual award and, beyond that, it declared that an agreement to arbitrate future disputes was against public policy and not enforceable. See Kulukundis Shipping Co. v. Amtorg Trading Corp., supra, 126 F.2d at 982-983; Birdseye, Arbitration and Business Ethics 62 (1926); cf. Sayre, "Development of Commercial Arbitration Law," 37 Yale L.J. 595 (1928). Whether the judicial hostility originated in ancient jealousies and fears of being ousted from jurisdiction (Lord Campbell in Scott v. Avery, 5 H.L. Cas. 811, 853, 10 Eng. Rep. 1121, 1138 (1856)) or whether it originated in less ignoble considerations (6A Corbin, Contracts § 1433 (1962)) need not concern us; that there was in fact judicial hostility which must have had its effect on common law doctrines bearing on arbitrations would appear to be beyond dispute. See Shribman v. Miller, 60 N.J. Super. 182, 191 (Ch. Div. 1960).
The English common law permitting revocation prior to the award and declaring agreements to arbitrate future disputes *300 to be unenforceable was carried over into the common law of the various states. See 6 Williston, Contracts § 1919 (Rev. ed 1938); 6A Corbin, supra, § 1433. In most states the common law has since been altered by statute. See 6 Williston, supra, § 1920; Sturges, Commercial Arbitrations and Awards § 26 (1930); Domke, The Law and Practice of Commercial Arbitration § 4.01 (1968). In some states it has been altered by judicial decision. See United Ass'n of Journ. & App. of Plumbing, Etc. v. Stine, 76 Nev. 189, 351 P.2d 965 (1960); Park Const. Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N.W. 475 (1941); Ezell v. Rocky Mountain Bean & Elevator Co., 76 Colo. 409, 232 P. 680 (1925).
In Stine, supra, the Nevada Supreme Court declined to follow the rule which had at common law declared that covenants for arbitration of all future disputes are "contrary to public policy". 76 Nev. at 204, 351 P.2d at 973. In the course of his comprehensive opinion, Justice Badt pointed to the questionable underfootings of the rule when originally enunciated and to the highly changed current circumstances; he quoted approvingly from Justice Wolfe's concurring opinion in Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421 (1945), where the Justice had suggested that it was due time that courts evidenced "a change in attitude to encourage rather than discourage use of arbitration machinery in cases where such machinery is well adapted" (108 Utah at 375, 160 P.2d at 426); and he held that a provision in a labor agreement for the submission of future controversies to arbitration was entirely lawful and fully enforceable despite the earlier common law notions to the contrary. 76 Nev. at 202-214, 351 P.2d at 972-978.
The common law unanimity rule was in all likelihood a subordinate incident of the judicial hostility to arbitrations; it was generally adopted by the various state courts without discussion of its origin or validity though at least one state rejected it with the following brief comment: "Whatever may be the rule elsewhere, the rule in this state is that *301 an award by a majority of arbitrators is valid, whether the matter submitted be private or under a rule of court (Lockart v. Kidd. 2 Mills, Const. 217; Leatherwood v. Woodroof, 2 Brev. 380), or by contract of the parties (Black v. Pearson, 1 McCord, 137), or whether the matter be public, as in this case (Abbeville Co. v. McMillan, 52 S.C. 72, 29 S.E. 540)." Greenville County v. Spartanburg County, 62 S.C. 105, 124, 40 S.E. 147, 153-154 (1901).
In Omaha v. Omaha Water Co., 218 U.S. 180, 30 S.Ct. 615, 54 L.Ed. 991 (1910), Justice Lurton noted that while in private matters the rule "seems to be" that there must be unanimity unless otherwise indicated in the submission, the rule is otherwise "when the submission is one which concerns the public." 218 U.S. at 192-193, 30 S.Ct. at 616, 54 L.Ed. at 997. Justice Lurton acknowledged that it was unclear why there was a distinction and he suggested that since public affairs are governed by majorities, perhaps "by analogy, a majority should control when the submission is a matter which concerns the public." 218 U.S. at 193, 30 S.Ct. at 616, 54 L.Ed. at 997. However, he did not advance any reason whatever as to why a majority should not ordinarily control when the matter is a private arbitration. Cf. Comisky & Comisky, "Commercial Arbitration  Panacea or Nightmare?" 47 Temp. L.Q. 457, 473 (1974).
In 1925 the Congress enacted the United States Arbitration Act which was designed to make "valid, irrevocable, and enforceable" (9 U.S.C.A. § 2) provisions for arbitration of disputes arising out of maritime and certain other contracts. 9 U.S.C.A. § 1 et seq. The statute was silent with respect to the common law's rule of unanimity though it did contain a provision that the arbitrators "or a majority of them" may issue subpoenas to compel the attendance of witnesses. 9 U.S.C.A. § 7. In Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1932), the contract was subject to the following provision: "All disputes arising under this contract to be arbitrated before the Committee on Grain of the New York Produce Exchange *302 whose decision shall be final and binding." The Committee rendered its arbitration award which was, however, signed by only four of the five arbitrators. In rejecting the contention that the award was invalid under the unanimity rule Chief Justice Hughes said: "The statute is silent with respect to a decision by a majority, but it does authorize action by a majority in compelling the attendance of witnesses (section 7). In the absence of statutory requirement, the question as to the necessity of unanimity in the decision on the merits would be determined by the arbitration agreement, and it does not appear that under the agreement in this instance unanimity was needed." 284 U.S. at 276, 52 S.Ct. at 169, 76 L.Ed. at 289.
Since the enactment of the United States Arbitration Act the federal courts have appropriately given it broad interpretative sweep. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270, 276 (1974). Thus in Kulukundis, supra, 126 F.2d 978 Judge Frank stressed that the intent of Congress was "to shake off the old judicial hostility to arbitration" and that consequently the federal courts "should not follow English or other decisions which have narrowly construed the terms of arbitration agreements or arbitration statutes." 126 F.2d at 985. In Metro Industrial Painting Corp. v. Terminal Const. Co., 287 F.2d 382 (2 Cir.), cert. den. 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961), Judge Moore referred to the federal policy "to construe liberally arbitration clauses" and "to resolve doubts in favor of arbitration". 287 F.2d at 385. See also Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2 Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Petition of Dover Steamship Company, 143 F. Supp. 738, 740-742 (S.D.N.Y. 1956). There would appear to be little reason to doubt that under the Supreme Court's holding in Dreyfus (284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282) and the broad interpretative principles set forth in Kulukundis (126 F.2d 978) and its succeeding cases, an arbitration agreement enforceable under *303 the United States Arbitration Act will be construed by the federal courts as permitting a majority determination in the absence of a contrary direction in the agreement to arbitrate.
Two years before the federal statute was adopted, New Jersey enacted its current arbitration act. L. 1923, c. 134; N.J.S.A. 2A:24-1 et seq. It provided, as did the federal statute, that agreements to arbitrate future as well as existing disputes shall be "valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract." N.J.S.A. 2A:24-1. And, like the federal statute, it was silent with respect to the common law's rule of unanimity though it contained the provision that the arbitrators "or a majority of them" may issue subpoenas to compel the attendance of witnesses. N.J.S.A. 2A:24-6. Professor Landon in his article on "Commercial Arbitration in New Jersey," 1 N.J.L. Rev. 65 (1935), detailed fully the earlier history of arbitration in New Jersey and noted that the 1923 statute was well designed to strengthen and simplify arbitrations and that every effort had been made "to eliminate those technicalities and formalities of the law which have always proved so annoying to the business man." Landon, supra, 1 N.J.L. Rev. at 81-82. Contemporaneous comments in the New Jersey Law Journal expressed the view that, among its advantages, the statute would assist in reducing judicial backlogs. See 46 N.J.L.J. 323-324 (1923); 45 N.J.L.J. 227 (1922).
Our cases since the enactment of the 1923 statute repeatedly stress that arbitration is now "looked upon favorably by the courts" and "every intendment is indulged in favor of an award." Melvin P. Windsor, Inc. v. Mayflower Sav. & Loan, 115 N.J. Super. 219, 220 (App. Div. 1971). See Daly v. Komline-Sanderson Engineering Corp., 40 N.J. 175, 177 (1963); N.J. Manu. Ins. Co. v. Haran, 128 N.J. Super. 265, 269 (App. Div. 1974); Keppler v. Terhune, 88 N.J. Super. 455, 461 (App. Div. 1965); Shribman v. Miller, supra, 60 N.J. Super. at 193. And in line with the modern approach set forth by Judge Frank in Kulukundis, supra, *304 126 F.2d at 985, they construe arbitration agreements liberally rather than narrowly, bearing in mind that "the very design of a contract of arbitration is to secure an effective award from the arbitrators" (Ench Equipment Corp. v. Enkay Foods, Inc., 43 N.J. Super. 500, 503 (App. Div. 1957)) and that parties who agree to arbitrate intend "to have their disputes speedily, economically and finally settled" (Carpenter v. Bloomer, 54 N.J. Super. 157, 168 (App. Div. 1959)). See also Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227 (App. Div. 1967); cf. Domke, supra at 30-31.
The 1923 statute sets forth that the arbitration shall be by a single arbitrator unless otherwise provided by the parties. N.J.S.A. 2A:24-5. Here they provided in the lease for three arbitrators. They could have but did not expressly provide that all three arbitrators must agree. They could have but did not expressly provide that a majority would suffice. Presumably the subject did not occur to the draftsmen for it may fairly be assumed that, if it had, they would have dealt with it specifically. While it cannot be said with certainty what they would have done, we do know that in modern times arbitration agreements generally contemplate that majority awards are to be binding; this is particularly true where, as here, the agreement provides that each party shall designate a single arbitrator and that the two arbitrators shall select the third, sometimes referred to as "the `neutral' arbitrator". Petition of Dover Steamship Company, supra, 143 F. Supp. at 741.
Parties ordinarily agree to arbitrate because they consider that arbitration is much more expeditious and much less costly than court litigation. However, they are aware that only an effective and final arbitration will serve their interests and that insistence on unanimity among several arbitrators may well entail successive proceedings with additional cost and additional delay. While they are at liberty to insist on unanimity, the pertinent values strongly suggest that when their agreement is silent on the subject, unanimity *305 should not be required. This is in effect what the Supreme Court concluded under the 1925 Federal Arbitration Act (Marine Transit Corp. v. Dreyfus, supra, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282) and what we now consider may fairly be concluded under our 1923 State Arbitration Act (N.J.S.A. 2A:24-1 et seq.).
It is true that in Factors, Inc. (5 N.J. 485) Justice Case adhered to the common law rule that unanimity is required unless otherwise indicated by the terms of the submission. But he did not discuss the effect of the 1923 statute or the cases thereunder; nor did he mention the federal statute or the federal decisions. Indeed none of the parties in Factors had requested any reevaluation of the common law rule and accordingly the Court found no occasion to consider whether it should then be altered. Whatever validity the common law rule may originally have had, it is clear to us that it has no proper place in current times. This Court has not hesitated to reject common law doctrines which have outlived their usefulness and which no longer serve justice or the interests of society. See Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); Smith v. Brennan, 31 N.J. 353 (1960); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); France v. A.P.A. Transport Corp., 56 N.J. 500 (1970). We now explicitly overrule the common law doctrine adhered to in Factors, Inc. in favor of a rule that a majority award is sufficient unless otherwise directed by the agreement to arbitrate. Since in the case at hand the agreement did not direct that there be unanimity, the Chancery Division properly confirmed the majority award; accordingly the Appellate Division's reversal of the judgment entered in the Chancery Division is hereby:
Reversed.
For reversal  Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD  5.
For affirmance  None.