## VOLUME 82,

AND

# New York State Reporter,

## VOLUME 116.

(83 App. Div. 298.)

### DU FRANE v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. STREET RAILWAYS—INJURY TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE—RELIANCE ON SLACKENING OF SPEED.

While a pedestrian who reaches a street car track in time to cross safely if the speed of an approaching car is not increased is not negligent in proceeding, yet, if it would be apparent to a person of ordinary prudence that the car will overtake him unless the speed is slackened, it is negligent for him to proceed, though he have an equal right with the company to the use of the street.

2. SAME—SUFFICIENCY OF EVIDENCE.

Evidence in an action by the administratrix of a pedestrian killed by a street car construed, and *held* insufficient to sustain a verdict for plaintiff, based on the theory that decedent was not guilty of contributory negligence in crossing in front of an approaching car.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Catherine Du Frane, as administratrix of the goods, chattels, and credits of George Du Frane, deceased, against the Metropolitan Street Railway Company. From a judgment for plaintiff entered on a verdict in her favor, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued befor VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Bayard H. Ames, for appellant.

George F. Hickey, for respondent.

82 N.Y.S.—1

LAUGHLIN, J.   This is a statutory action to recover for the death of George Du Frane, alleged to have been caused by the negligence of the defendant.   The decedent, while crossing Amsterdam avenue from west to east, either along the northerly cross-walk, or diagonally toward the northeast from the northwest corner of 181st street and Amsterdam avenue, on the 19th day of June, 1901, was struck by a north-bound car just as he reached the north-bound street railway, and thrown between the north and south bound tracks, and from the injuries received he died on the same day.

No exception was taken upon the trial which presents reversible error.   The jury had considerable difficulty in arriving at a verdict, as is manifest from their coming into court for further instructions, and subsequently returning to court and announcing their inability to agree, whereupon the court, after advising them that it was important that they should agree upon a verdict, and making some suggestions with a view to bringing about an agreement, sent them out again, and a sealed verdict was rendered in favor of the plaintiff.

The motion for a new trial was made upon the ground, among other things, that the verdict was against the weight of the evidence; and, upon a careful review of the evidence, we are of the opinion that it should have been granted.

Amsterdam avenue is 100 feet in width.   The carriageway from curb to curb is 70 feet, and 15 feet upon either side is occupied by the sidewalk.   The street is paved with rough stones, referred to as cobblestones, but doubtless blocks of sandstone.   A cross-walk extends across the carriage way along the northerly line of 181st street.   The defendant owns and operates a double-track street railway along the avenue.   There is a space 20 feet between the inner rails of the tracks, and a like space between the outer rails and the curb upon either side. The space between the rails of each track and that occupied by the track is approximately 5 feet.   The accident occurred at about midday, and it is undisputed that there was no other car, vehicle, or other obstruction to the view up or down the avenue either way for a distance of three blocks.   The evidence all indicates that the decedent was struck by the front extreme westerly or outer corner of the car just as he was stepping upon the track, and before he had reached a point between the rails.   It thus clearly appears that he must have been struck while taking the first, or at most the second, step, which brought him within the range of the body of the car, or, in other words, from a point of safety to a place of danger.

The plaintiff called three eyewitnesses to the accident, and the defendant called five.   The decedent was 52 years of age; was in the possession of all his faculties, except that there is a conflict in the evidence concerning whether his hearing was good; was a healthy, active man, having taken part in athletic contests—walking matches; and was at the time janitor of four houses, and soliciting agent for the Police Gazette.   He had been in the barroom of Porter's Hotel, situated at the northwesterly corner of 181st street and Amsterdam avenue, and there solicited and obtained an order for the Gazette for three months.   He had an Angora lamb in a box described as an egg box. On leaving the hotel he placed this box on his shoulder.   The wit-

nesses called by the plaintiff say he carried it on his left shoulder, which would not obstruct his view of a car approaching from the south; and the witnesses for the defendant say upon his right shoulder, which would obstruct such view. One of the witnesses for the plaintiff, who was standing on the northwesterly corner of 181st street and Amsterdam avenue, facing the avenue, says that the decedent paused for a minute at the curb, looked up and down the avenue, and then passed directly along the cross-walk east, with his head facing in the direction in which he was going, until the time he was struck; that at the time the decedent was at or just about the south-bound track the car was only 50, 75, or 80 feet away, coming up a slight grade at the rate of between 15 and 20 miles an hour—and then says, "or about fifteen miles an hour," and he indicates a point upon a diagram about two-thirds the distance from 181st to 182d street, where the car stopped after the accident. He further testified on re-direct examination that when the car was 50 feet from the decedent the latter was crossing the south-bound track, and the motorman was looking in a southeasterly direction, toward High Bridge, with his back almost turned toward the decedent, and so continued until after the accident; and he says that he heard no bell or gong. Another witness called by the plaintiff, who was standing on the porch of Porter's Hotel, facing the avenue, says that, as the decedent left the curb and started across the track, he looked up and down the avenue; and further on in his examination he says that this occurred when the decedent was crossing the south-bound track, and that, after thus looking up and down, the decedent went straight ahead until he was struck; that the car was from 50 to 75 to 80 feet away when the decedent was on the east-bound track—by which he evidently meant the south-bound track—and that the car was coming at "a good, fast gait"; that it went nearly to 182d street before stopping; that the motorman was not looking ahead, but toward the east; and that he heard no gong. The third witness called by the plaintiff was coming down the easterly side of the avenue from a point between 182d and 183d streets. He says that he saw the decedent upon the curb in front of Porter's Hotel, and that the car was then a little below 180th street, coming fast— at the rate of about 15 miles an hour; that when the decedent was crossing the south-bound track the car was about 100 feet distant; that the car went 30 or 40 feet, or a quarter of the length of the block, after the accident, before stopping; and that as the car came up the avenue the motorman was looking across toward Washington Bridge. The plaintiff called another witness—a passenger who was on a south-bound car three blocks to the north, and did not see the accident, but saw the man "pitched" and turn a somersault between the tracks.

According to the evidence of most of defendant's witnesses, the decedent was passing diagonally to the northeast, and reached the track upon which he was struck at a point about 20 feet or more north of the northerly cross-walk. The conductor and motorman of the car testified that it stopped at some point below 181st street to let off some passengers. The motorman's evidence indicates that this was between 180th and 181st streets, and nearer the latter, and the conductor leaves it in doubt whether it was in the block above or be-

low 180th street. According to the testimony of the motorman, he slowed up as he approached 181st street, was looking ahead and to the right and left for pedestrians and vehicles on 181st street, and that the decedent "kind of stopped and started up for to walk quicker than he was"; that the gong was sounded, and he shouted to the decedent and reversed the car, but that the decedent paid no attention, and kept right on, and stepped in front of the car when it had almost come to a stop; that the corner stanchion or hand rail struck the box on decedent's shoulder; that he endeavored to reach the decedent, over the dashboard, to prevent his stepping on the track, and that the car stopped within 15 or 20 feet, with the front of the rear wheel of the forward truck about opposite decedent's head. He says that the car could not run up that grade, which was only slight, at a greater speed than 8 miles an hour, and that it was only running at half speed while crossing 181st street, and was slowing down when it struck decedent. The testimony of the conductor, who had left the employ of the company and taken another situation, and who was on the running board on the easterly side and about the middle of the car, corroborates the motorman as to the ringing of the gong, the speed, and to the endeavor to stop and reach the decedent over the dashboard. A motorman who was in the employ of the company at that time, but had since left its employ—engaged in business for himself—was riding on the car; and his testimony also corroborates that of the motorman with reference to the speed of the car, and the endeavor to prevent the decedent from stepping upon the track. An artist, who was a passenger on the car, testifies that when the car was 60, 70, or 80 feet from the north crossing, decedent was approaching the south-bound track on a brisk walk; that he saw the decedent again when only a few feet from the car, and that at this time the car was slowing down, the bell ringing, and there was a commotion among the passengers; that it came to a stop within 10 or 15 feet after the accident; and that the body of the decedent was about opposite the middle of the car when it stopped. On cross-examination he repeats that when he first saw the decedent he had not reached the first track, but then says he does not remember whether he had passed this track; and on redirect examination he again states that the decedent had not at that time reached the first track.

Another witness called by the defendant was standing on the porch of the Porter Hotel, and says that the decedent started diagonally across the street, and stopped momentarily between the tracks, when the car was 50 or 60 feet away, and then the decedent suddenly started on again, and continued until he was struck. He does not say that the decedent looked at the time of this momentary stopping, and, according to his evidence, the box was on decedent's right shoulder. He says that the car only went a foot or two after the accident, and that the motorman rang the bell at a furious rate, and reached over the dashboard in an endeavor to save the decedent.

This is the substance of the material testimony of the eyewitnesses to the accident. Of course, it cannot be given in full, and there are contradictions and explanations not noted in this summary.

Assuming that it may not be said, as matter of law, that decedent

was guilty of contributory negligence, yet the undisputed facts with reference to this accident, and the probabilities, indicate quite clearly that the accident would not have happened, and could not have happened, in the manner that it did, had he exercised proper care and caution for his own safety. If as the testimony of one of the witnesses for the plaintiff indicates, he did not look after leaving the curb, when the car was a little over a block distant, and he had to travel a distance of 45 feet before reaching the track on which it was approaching, and about 52 feet to clear that track, it would seem that he did not make the use of his senses of sight and hearing that he was called upon to make, and that a person of ordinary prudence would have made under the circumstances. The conclusion is irresistible from the evidence that the car must have been close upon him as he stepped from a point of safety to a place of danger. Assuming that the car was going at the highest rate of speed specified by any of the witnesses, it must have been not more than 10 or 20 feet from him when he passed within its range. With nothing else to attract his attention or interfere with his hearing, and with no obstruction to his view, at midday in the month of June, it would seem as if, had he exercised ordinary care and caution, that he would have discovered the presence of the car, which must have been crossing 181st street, before he reached a point of danger. If the box was on his left shoulder, and he was passing directly along the line of the cross-walk, practically at right angles to the track, it would seem as if this car must have been within the range of his vision, if his eyes were open, assuming that they were normal, even if he were looking straight ahead. If, as testified by another witness for the plaintiff, the decedent looked when at or upon the south-bound track, when the car was within 50 to 75 feet, he still having 20 or more feet to travel before reaching the track upon which it was approaching, and still more to clear that track, it is not easy to understand how he could go upon the track, in the exercise of proper care and caution for his own safety, without again noting the location of the car. The rule is, of course, well settled, that on a crossing like this the street railway and pedestrians have equal rights; but, if either is negligent in exercising this right, he cannot recover any damages sustained, even if they might have been prevented by the exercise of ordinary care on the part of the other. If a pedestrian reaches the track in time to cross it in safety, provided the speed of an approaching car be not increased, he cannot be said to be negligent in proceeding; but if it is apparent to him, or would be to a person of ordinary prudence, exercising ordinary care, that the car will inevitably overtake him unless the speed is slackened, then it is not a prudent act for him to assert his rights and proceed, even though it be the duty of the motorman to slow down or stop to enable him to cross. In the case at bar the evidence is ample to show negligence on the part of the railway company, but it is quite as essential to the plaintiff's right of recovery that freedom from negligence on the part of the decedent be shown.

For the reasons already assigned, we are of the opinion that this is a case where justice requires that we should exercise the power with

which we are vested, and the duty enjoined upon us, of setting aside
the verdict as against the weight of the evidence.

It follows that the judgment and order should be reversed, and a
new trial granted, with costs to appellant to abide the event. All con-
cur, except PATTERSON, J., who dissents.