EASTERN ENGINEERING COMPANY, A CORPORATION, PLAINTIFF, v. CITY OF OCEAN CITY, A MUNICIPAL CORPORATION, DEFENDANT.

Decided July 3, 1933.

For the plaintiff, *Vincent S. Haneman.*

For the defendant, *Andrew C. Boswell* and *William H. Campbell, Jr.*

JAYNE, C. C. J. It appears that matters of account were involved in the above entitled action, and thus a rule was entered designating Joseph Thompson, Esquire, as a referee to determine the matters in controversy between the parties.

It is recited in the rule by which the reference is made that "the parties hereto agree to submit the matters and differences between them to the award and final determination of Joseph Thompson, Esquire, as it appears by consent hereto endorsed." Moreover, the rule to which the parties consented provides that "said award and final determination shall have the same effect accorded to a findng of arbitrators."

Having taken considerable testimony as disclosed by a transcript of over nine hundred pages, the referee filed a report expressing his conclusions upon the controversial questions, resulting in his final determination that the defendant on April 18th, 1933, was indebted to the plaintiff in the sum of $16,769.72.

Application is now made in behalf of the plaintiff for the confirmation of the report of the referee to the end that judgment may be entered thereon in this action. 1 *Comp. Stat., p.* 103. It is important to observe that no reservation of a right to trial by jury was entered in the minutes by either party at the time of the reference.

In resisting the application for the confirmation of the referee's report, counsel for the defendant, with a frank expression of uncertainty as to the proper practice, has filed certain reasons in writing which are entitled "defendant's objections to confirmation of referee's report," and these reasons are also repeated in the form of exceptions to the report. In the brief, counsel for defendant asks that a new trial be granted or that the report be so modified as to meet the defendant's objections.

The filing of exceptions to the report of the referee is not the proper practice. A motion to set aside the report is the

recognized practice and procedure to be pursued by the dissatisfied party. *Runyon* v. *Hodges,* 46 *N. J. L.* 359; *The Children's Home Association* v. *Hall,* 47 *Id.* 152; *Grantwood Lumber Co.* v. *Aragona,* 109 *Id.* 447; 162 *Atl. Rep.* 883. A motion to set aside the report with the assignment of reasons is the proper procedure, whether the finding of the referee is to be regarded as a verdict or as an award of arbitrators. Before the promulgation of the Supreme Court rule, it seems that the report of referees possessed all the significance and characteristics of an award of arbitrators. The present Supreme Court rule 99 is as follows:

"All rules of reference entered by consent of parties in this court, or in the Circuit, may state whether the award of the referee is to have the effect of a finding of arbitrators, or merely the force of a verdict, and in the absence of such statement, the award shall be treated as a verdict."

This rule was adopted at the June term, 1873, giving definite form to the doctrine of *Fitch* v. *Archibald,* 29 *N. J. L.* 160, and *Excelsior Carpet Lining Co.* ads. *Potts,* 36 *Id.* 301.

Disregarding any irregularity of procedure in the instant case and recognizing the contention now made in behalf of the defendant as a motion to set aside the report of the referee, it becomes necessary to attach proper significance to the obvious intention of the parties to this action as disclosed by the language of the rule for the reference. This rule recites that the parties agree to submit the matters and differences between them to the award and final determination of the referee and that his final determination shall have the effect of an award of arbitrators. The reference in this case was obviously a voluntary commission of the matters in controversy to a referee selected by the parties, with the express understanding that the report of the referee would be as conclusive as an award of arbitrators. It has been frequently stated that arbitration proceedings as a method of determining private controversies are favored by the courts and that accordingly the courts will make all fair presumptions in order to sustain the award. The settlement of controversies by arbitration is an ancient practice at common law. In its broad sense, it is a substitution, by consent of the parties, of

another tribunal for the tribunal provided by the ordinary processes of law. The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties. Thus, every reasonable intendment will be indulged in favor of the regularity and integrity of the acts of the arbitrator with the assumption that the award is the honest decision of the arbitrator. 2 *R. C. L.* 389; 5 *C. J.* 16 *et seq.* The opinion of Mr. Justice Whitehead, in *Stolls, Administrator,* v. *Price,* 21 *N. J. L.* 32, reviewed by the Court of Errors and Appeals in *Bell* v. *Price,* 22 *Id.* 578, sheds illumination upon the characteristics of an award of arbitrators and the reasons deemed sufficient to set aside such an award. The subject is again discussed in *Taylor* v. *Sayre & Peterson,* 24 *Id.* 647. The following pertinent excerpts may be taken from the opinion of Vice-Chancellor Van Fleet in *Leslie* v. *Leslie,* 50 *N. J. Eq.* 103; 24 *Atl. Rep.* 319, which was a suit to annul an award:

"The submission is the commission of the arbitrator. By force of it, he becomes a judge with absolute power over the things submitted to his judgment. So long as he acts uprightly and impartially, and keeps within the limits of his authority, and deprives neither party of a full and fair hearing, his judgments are unimpeachable and irreversible. He may do what no other judge has a right to do; he may intentionally decide contrary to law and still have his judgment stand. This was so declared in *Bell* v. *Price,* 2 *Zab.* 578, 590, where Mr. Justice Carpenter, in pronouncing the judgment of the Court of Errors and Appeals, said, in substance, that if arbitrators mean to decide according to law but mistake the law in a material respect, and their mistake appears on the face of the award, or they admit it, the award will be set aside because it does not express their real judgment; but in cases where they do not intend to let the law govern their judgment, but to decide according to their own notions of what is just and right, the courts will not interfere, but allow their award to stand."

"It is manifest that if the decisions of such a tribunal were subject to be tried by the strict rules of the law, an arbitra-

tion, instead of being an inexpensive mode of finally settling disputes would, in a majority of instances, be but the prelude to an expensive and protracted litigation. To avoid such consequences, it has become a settled principle of jurisprudence that awards are to be expounded favorably and every reasonable intendment made in their support."

In *Bell* v. *Price, supra,* the court observed:

"In regard to mistakes in law courts will not interfere, unless it appears that the arbitrators meant to decide according to the legal rule, and had mistaken it; and it must so appear on the face of the award or by the statement of the arbitrators. If arbitrators mean to decide according to law, but mistake the rule in some palpable and material point, in such case the award will be set aside, as not conformable to their real judgment and intention. But, unless they intend to be bound by the legal rule, courts will not withdraw the matter from the tribunal which the parties themselves have selected. The courts will not undertake to inquire whether the conclusion was right or not, unless they can see that, professing to decide according to law, the arbitrators had decided contrary to law."

So as to mistakes in fact, those which can be taken advantage of in this mode are comprised within very narrow limits, and must appear on the face of the award itself or in some authentic shape. They must be such as the arbitrators would admit, as miscalculation in an account, or the like, and certainly unless they appear on the face of the award, or the accompanying paper, must be made out to their satisfaction."

"In a loose sense, the arbitrators may be said to have fallen into an error or mistake when they have judged wrong upon the evidence before them. But this is not the kind of error or mistake intended, because so far as they have exercised their judgment it is conclusive, though to other minds the result might seem palpably erroneous. The mistake must be of a different character, something which has deceived or misled them, and not a mere mistake in drawing conclusions of fact from observation or evidence."

Our statute entitled "An act for regulating references and determining controversies by arbitration," a descendant of the

statute of 9 and 10 William 3 passed in 1698, in the statement of specific grounds for setting aside an award, speaks only of an award procured by corruption or other undue means. The phrase "undue means" embraces mistakes and errors of law or fact as explained in *Taylor* v. *Sayre & Peterson, supra.*

With this prelude, we come now to the theme of the present objection to the confirmation of the referee's report. Needless to say, there is no suggestion of misbehavior on the part of the referee or that his award was procured by corruption. The reasons assigned in behalf of the defendant for setting aside the award all state that the referee undertook to decide the certain issues specifically mentioned according to law, but that he has erred and has mistaken the law. The truth of the statement contained in these reasons is not apparent on the face of the report. It is not apparent from an examination of the report that the referee was mistaken as to the law applicable to the facts and circumstances as he determined them from the testimony. Where an arbitrator admittedly intended to decide according to law and it appears that he has mistaken the law, the court will very properly interpose because in such event the award is admittedly not the award the arbitrator intended to render. Such is said to be the situation in the instant case. It is asserted in behalf of the defendant that the referee erred in applying the unit prices rather than the lump sum in determining the amount due the plaintiff under the contract. It is quite obvious that both in the proposal and in the contract, the lump sum was based upon estimated quantities. In contracts for the construction of sewer systems, it is anticipated that the quantity of material may vary from that originally estimated by the engineer in the preparation of the specifications. This has occasioned the use of a form of contract which includes unit prices for the separate classes of material and labor. The contract with which the referee was concerned was in this form. The city agreed to pay the contractor the unit prices for the materials and labor required to complete the sewer system, and the intermediate payments were to be based upon

the amount of work prformed and materials furnished each month according to the unit prices, less ten per cent., including only the completed units of work and materials according to the classification contained in the contract and for which the definite prices had been fixed.

Additionally, it is argued that the referee erred in making an allowance to the plaintiff for extra work in that such extra work was not ordered in writing by the city engineer and approved by the director as required by a provision of the contract. The report of the referee discloses that he concluded from the testimony that the parties in the circumstances, by mutual agreement and consent, abandoned the observance of this provision of the contract.

The defendant complains of the allowance of $500 to the plaintiff to compensate the plaintiff for its loss occasioned by the suspension of the work ordered by the city. The contract provides that the director may suspend the work, and in the event of any such suspension, the contractor shall be reimbursed for damages representing actual loss incurred by such suspension. This was one of the matters in dispute between the parties which, by the reference, the referee was called upon to determine. The defendant is dissatisfied with the disallowance by the referee of the claim of the city for liquidated damages by reason of the delay in the completion of the work. The referee concluded that the city and not the plaintiff was responsible for the delay. On the other hand, the report further discloses that the referee disallowed claims of the plaintiff amounting in the aggregate to $2,280.90.

No justifiable reason for setting aside the report is made to appear, and accordingly a rule for the confirmation of the report will be made.