29 N.J. Super. 68 (1953)
101 A.2d 592
MEL KENNEDY, ANTHONY LONGO, MARTIN DEVOURSNEY, JOSEPH SCERBO, EDWARD WIESE, BEN CHIVALK, WILLIAM E. REYNOLDS, SR., AND WALTER GEISLER, PLAINTIFFS-RESPONDENTS,
v.
WESTINGHOUSE ELECTRIC CORP., A CORPORATION OF PENNSYLVANIA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1953.
Decided December 18, 1953.
*71 Before Judges CLAPP, GOLDMANN and EWART.
Mr. William L. Dill, Jr., argued the cause for appellant (Messrs. Stryker, Tams & Horner, attorneys; Mr. Walter F. Waldau, of counsel)
Mr. Morton Stavis argued the cause for respondents (Messrs. Gross & Blumberg, attorneys).
The opinion of the court was delivered by EWART, J.A.D.
The eight plaintiffs, members of the United Electrical, Radio & Machine Workers of America (U.E. Local No. 456), instituted a class action on behalf of themselves and some 700 fellow members of the union to recover compensation for hourly-paid employees for Labor Day, September 3, 1951, under the terms of the union contract with the defendant Westinghouse Electric Corp. The plaintiffs and the other members of the union performed no services on the date mentioned, but assert that, under the terms of their contract with the defendant, they were entitled to be paid for this and other holidays enumerated in the contract. The defendant company refused to pay for the holiday in question for the reasons hereinafter mentioned.
This suit was tried in the Law Division of the Superior Court without a jury and resulted in judgment for the plaintiffs from which the defendant appeals. The opinion of the trial court is reported 25 N.J. Super. 601 where the essential facts of the controversy are fully set forth.
The contract between the union and the defendant company, upon which this suit is based, provides in section X thereof that the basic work week shall be 40 hours based on eight hours per day, five days per week, Monday to Friday, inclusive; section XII, 1 (a) and (e) provide for *72 seven paid holidays during the year, among which is included Labor Day. Section VII (a) of the contract reads in part as follows:
"The Union and the Locals will not cause or officially sanction their members to cause or take part in any strike (including sitdowns, stay-ins, slow-downs, or any other stoppage of work) during the life of this Agreement."
Paragraphs 1 (b), (c) and (d) of section XII of the contract read as follows:
"b. All hourly paid employes who have completed three (3) month's continuous service immediately preceding the holiday will be paid for their established shift hours on a holiday observed between Monday and Friday both inclusive. Hourly paid employes who were laid off for lack of work and are rehired within five (5) years after layoff, who had completed three (3) months' continuous service and had a total employment of at least one (1) year prior to their layoff, will also receive the above holiday payment.
c. Hourly-paid employes will be paid for such hours at their average earned rate, as defined in Section XI, for the payroll period involved.
d. The above payment will be made only to hourly paid employes who are on the active roll as of the day before the holiday within the week and who earn some wages during the week in which the holiday falls or any of the four preceding weeks."
The trial court found as a fact, and we are satisfied that the record supports such findings, that defendant's hourly employees, including the plaintiffs, instituted the practice of refusing to work for the full eight hours of their prescribed employment; that for the period from July 12 to August 24, 1951 they worked only six hours per day; that on August 27 and 28 they worked the full eight hours; that for the period from August 29 to September 11 they worked for periods ranging from 3 1/2 to six hours per day; that on August 31 the officers of the union were notified that if the employees refused to work the full prescribed eight hours on that day, they would not be paid for the ensuing Labor Day; that in spite of the warning the employees worked only 5 1/2 hours on the date last mentioned; that on September 11 the employees were informed that if they did *73 not work the full eight hours on that day, the plant would be closed down, but that, notwithstanding, the employees worked only 6 1/2 hours on that date; that on September 12 the plant was actually closed down so far as concerned hourly-paid employees; and that the work stoppages mentioned were a deliberate attempt on the part of the union and the employees to coerce the company into making certain concessions with respect to then pending negotiations having to do with seniority rights of the employees. It also appeared that the plant reopened September 13 and that the hourly employees returned to work on that date.
On this appeal defendant contends that the almost daily and deliberate work stoppages persisted in by the union and the employees over a period of several weeks prior to Labor Day, in violation of section VII of the contract, constituted a breach of a condition precedent to be found in section XII, 1 (b) of the contract which provided for pay for holidays only to employees "who have completed three (3) month's continuous service immediately preceding the holiday * * *," and that the condition precedent not having been fulfilled, the employees forfeited any claim to pay for the holiday in question.
The trial court took the view that the expression "continuous service" found in the contract is equivalent to "uninterrupted employment"; that the employment of the plaintiffs and their fellow employees was never discontinued because the plaintiffs remained in the employ of the defendant during the entire period of time involved in this controversy; that the contract had not been terminated and that the employees were continuously carried on the company's payroll; and that plaintiffs and their fellow employees did not interrupt their "continuous employment" and consequently did not forfeit their right to holiday pay merely by indulging in the work stoppages mentioned. And the trial court further expressed the view that while the work stoppage indulged in by the plaintiffs constituted a breach of the provision of section VII of the contract above quoted, nevertheless that provision of the contract was independent *74 of the provisions found in section XII respecting holiday pay and that the breach by the employees of section VII, so long as the contract remained in force and the defendant continued to accept the services of the employees, did not relieve the employer from its obligation to pay the employees for Labor Day in accordance with the provisions of section XII of the contract, citing Rothman Realty Corp. v. MacLain, 16 N.J. Super. 280 (Ch. Div. 1951), affirmed 21 N.J. Super. 172 (App. Div. 1952); Kinney v. Federal Laundry Co., 75 N.J.L. 497 (E. & A. 1907).
In the first place, we think it must be conceded that there was "continuous employment" by the defendant of the plaintiffs and their fellow hourly employees notwithstanding the deliberate work stoppages engaged in by the employees as above mentioned. It has been repeatedly held that employees who are on strike and who render no service whatever during the strike period continue to occupy the status of employees, or striking employees. Iron Molders' Union v. Allis-Chalmers Co., 166 F. 45, 52 (C.C.A. 7, 1908); Keith Theatre, Inc. v. Vachon, 134 Me. 392, 413, 187 A. 692, 695 (Sup. Ct. 1936); Jeffery-DeWitt Insulator Co. v. N.L.R.B., 91 F.2d 134, 112 A.L.R. 948 (C.C.A. 4 1937); Fryns v. Fair Lawn Fur Dressing Co., 114 N.J. Eq. 462, 469 (Ch. 1933); Textile Workers, etc., of America v. Paris Fabric Mills, Inc., 18 N.J. Super. 421 (Cty. Ct. 1952), affirmed 22 N.J. Super. 381 (App. Div. 1952). In the case at bar, the employees continued to perform daily services, although deliberately refusing to work the full eight hours of their prescribed daily employment, but nevertheless there was the continual daily employment.
Secondly, whether or not the hourly employees were entitled to pay for the Labor Day in question must depend, we think, not upon any statute or rule of law, but rather upon the terms of the specific contract upon which the plaintiffs rely in bringing this suit. The parties were at liberty to agree upon the terms of their employment upon which liability shall depend (12 Am. Jur., Contracts, § 296; Textile Workers, etc., of America v. Paris Fabric Mills, Inc., *75 supra, and cases therein cited), and it is not within the province of the court to rewrite the contract or to vary the terms thereof. Textile Workers, etc., of America v. Firestone Plastics etc. Co., 6 N.J. Super. 235 (App. Div. 1950), certif. denied 4 N.J. 515 (1950).
Focusing our attention upon the particular terms of the contract in question, we find that by section VII thereof the union and their locals covenanted not to cause or to officially sanction their members to cause or take part in any slow-downs or any other stoppage of work during the life of the contract; that paragraph 1 (b) of section XII of the contract provided that all hourly-paid employees who have completed three months continuous service immediately preceding the holiday will be paid for their established shift hours for the holiday, subject, however, to the limitation contained in paragraph 1 (d) of section XII that "the above payment will be made only to hourly-paid employees who are on the active roll as of the day before the holiday within the week and who earn some wages during the week in which the holiday falls or any of the four preceding weeks."
The defendant contends vigorously that the provision in the contract for three months' continuous service immediately preceding the holiday is a condition precedent to the right of the hourly employees to pay for the holiday in question; that by the terms of the contract the basic work week was fixed at 40 hours based on eight hours per day for five days per week, Monday to Friday, inclusive; and that the deliberate and willful refusal of the hourly employees over an extended period of time to work the regular schedule of eight hours per day interrupted the continuity of the service during the three months' period immediately preceding the Labor Day in question and that the hourly employees thereby, by their own deliberate acts, disentitled themselves to be paid for the holiday in question. And defendant invites attention to the facts shown by the proofs that the work stoppages were not inconsequential; that the work stoppages continued from July 12 to July 20, 1951, inclusive, and from August 17 until September 12, 1951, excepting from *76 the latter period August 27 and 28; that the total man hours lost over the entire period amounted to 32,399 hours; that the average hours lost by each individual hourly employee over this period amounted to 50 1/2 hours; that during the two or three months preceding the holiday in question there were 13 days during which the hourly employees worked only 75% of the scheduled regular employment and three days when they worked less than 75% of their regular scheduled time. The attitude of the union and the employees is illustrated by statements contained in leaflets (Exhibit D-3) distributed by the union on August 30, 1951, just after the men had worked two full days on August 27 and 28, which leaflets contain the following statements:
"* * * the employees showed their resentment by attending a Union meeting at 1.00 o'clock."
and
"* * * However, the Company mistook our working full days for weakness * * *."
The rights of the parties in this controversy are dependent upon the terms of the contract they voluntarily entered into. The cardinal rule to be followed by the court in construing the meaning of a contract is to ascertain the intent of the parties as expressed in the language used in the contract and to give effect thereto. 12 Am. Jur., Contracts, § 227.
The word "service" is defined as the performance of labor for the benefit of another, or at another's command. Webster's New International Dictionary (2nd ed.)
The word "employment" connotes a status or relationship which may continue to exist even though no service is being rendered by the employee, as, e.g., in the case of a strike. (See authorities cited above).
The word "continuous" means without break, cessation or interruption; uninterrupted; unbroken. Webster's New International Dictionary (2nd ed.). To be continuous, *77 service must be practically uninterrupted. Petition of Gislason, 47 F. Supp. 46, 50 (D.C. Mass. 1942). The phrase "continuous service" must be viewed in the light of the terms of the contract which provides for a work schedule of eight hours per day for a five-day week, Monday to Friday, inclusive. One working the regular prescribed hours of labor would be rendering continuous service, within the terms of the contract, even though not working on Saturdays or Sundays, nor more than eight hours out of a 24-hour day.
It would seem evident that the phrase "continuous service" would embrace the idea of continuous or uninterrupted employment because without employment there could be no service, but that continuous employment does not necessarily embrace the idea of continuous service because employees might be out on strike for periods of days, weeks or months and still retain the status of employees although during the strike period they render no service whatever.
We are not called upon in this case to decide whether excused absences, or absences caused by illness, or absences due to other unavoidable causes beyond the control of the employee, would break the record of continuous service as that phrase is used in the contract. What we are called upon to decide is whether or not a deliberate and willful work stoppage, continued by the employees over a period of some weeks, constitutes a break in the record of "continuous service" as used in the contract.
Textile Workers, etc., of America v. Paris Fabric Mills, Inc., supra, is not authority for the proposition that the phrase "continuous service" is synonymous with the phrase "continuous employment" or the phrase "uninterrupted employment." In that case, the contract itself limited and defined the meaning of the term "continuous service" where it said: "The continuous service record of an employee shall be broken only by quitting, including refusal to return to work on recall, or justifiable discharge."
We agree with the trial court that the provisions of section VII of the contract against slow-downs or other work *78 stoppages and the provisions of section XII respecting paid holidays are not interdependent but are independent clauses, and that a breach by the employees of the provisions of section VII, so long as the contract remained in force, does not in and of itself operate to relieve the employer from its obligation contained in section XII to pay for certain specified holidays, including Labor Day. Kinney v. Federal Laundry Co., 75 N.J.L. 497 (E. & A. 1907); Sarco Co. v. Gulliver, 3 N.J. Misc. 641 (Ch. 1925); Magliaro v. Modern Homes, Inc., 115 N.J.L. 151 (E. & A. 1935); Rothman Realty Corp. v. MacLain, 21 N.J. Super. 172 (App. Div. 1952), affirming 16 N.J. Super. 280 (Ch. Div. 1951).
However, where by the terms of the contract performance on one side is made a condition precedent to performance by the other, such an intention expressed in the contract will be given effect. U. & G. Rubber Mfg. v. Conard, 80 N.J.L. 286 (E. & A. 1910); Corn Exchange National Bank, etc. v. Taubel, 113 N.J.L. 605 (E. & A. 1934). The parties to a contract are at liberty to agree upon a condition precedent upon which their liability shall depend. 12 Am. Jur., Contracts, § 296.
It has been suggested that the word "service" has a multiplicity and variety of meanings and different significations and that the sense in which it is used must be determined from the context in which it appears. 79 C.J.S., Service or Services, page 1139. In that connection, attention has been invited to paragraph 1 of section XIII of the contract relating to seniority in which it is provided that in all cases of rehiring or lay-offs due to increasing or decreasing forces "accumulated length of service will govern if the employee can do the job * * *," etc. There the word "service" seems to be synonymous with the word "employment." However, in paragraph 1 (b) of section XII quoted above, relating to paid holidays, the phrase "continuous service" is used in contrast with the phrase "total employment" and that, we think, tends to confirm our view that the words "service" and "employment" were not used as synonyms. And again in paragraph 2 A (1) of *79 section XII of the contract (not quoted above), annual paid vacations of hourly employees are made to depend upon a minimum of one year total employment which, as indicated above, we think is quite a different thing than continuous or uninterrupted service. Webster indicates that the predominating significance of the word "service" is performance of labor and that seems to be the sense in which the word is used in that portion of the contract relating to paid holidays.
Independent of the fact that the employees breached the provisions of section VII of the contract, and even supposing there were no such provisions as that contained in section VII, the parties to the contract in question saw fit to write into it, inter alia, the condition that only those hourly employees who had completed three months' continuous service immediately preceding the holiday should be entitled to pay for the holiday. We observe nothing illegal or contrary to public policy in such provision and we have no doubt that the parties were perfectly competent to make such a contract.
The deliberate work stoppages indulged in by the plaintiffs and the other hourly employees, over a period of some weeks prior to Labor Day 1951, in our view of the case, operated to break the continuity of their service to their employer and thus breached the condition which had to be fulfilled before they were entitled to pay for the holiday in question. This conclusion requires a reversal of the judgment appealed from and the direction that judgment be entered in favor of the defendant and against the plaintiffs.
Judgment reversed.