43 N.J. Super. 500 (1957)
129 A.2d 313
ENCH EQUIPMENT CORPORATION, A CORPORATION OF NEW JERSEY, AND GRACE I. ENCH, PLAINTIFFS-RESPONDENTS,
v.
ENKAY FOODS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1957.
Decided February 4, 1957.
*501 Before Judges CLAPP, JAYNE and FRANCIS.
*502 Mr. John W. Griggs argued the cause for plaintiffs-respondents (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Joseph N. Marotta, Jr., of counsel).
Mr. Joseph M. Jacobs argued the cause for defendant-appellant (Messrs. Stoffer and Jacobs, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendant appeals from two orders of the Superior Court, Chancery Division. But we are concerned primarily with one of them, an order vacating a prior order dated November 2, 1955.
The order of November 2, 1955, entered pursuant to a stipulation and an agreement supplementary thereto, directed three persons named therein to submit certain matters to arbitration. In conformity with the stipulation, two arbitrators were chosen, and they in turn appointed a third as umpire. Shortly thereafter, and before making any award, the three arbitrators, in effect, resigned; they wrote the Chancery Division saying they were "turning this matter back to the courts." Thereupon the then attorneys for the parties made an attempt, without success, to settle all matters in dispute; that failing, the defendant appointed a new arbitrator and called upon the plaintiffs to do likewise. Plaintiffs refused. Instead they moved to vacate the order of November 2, 1955. Defendant countered with a motion to compel arbitration in accordance with the parties' stipulation and agreement above mentioned.
The Chancery Division granted plaintiffs' motion and vacated the order to arbitrate. The plaintiffs now rely, in part (as did the Chancery Division), upon the fact that the stipulation and agreement contain no provision requiring a resubmission of the controversy to arbitration if the arbitrators fail to make an award. But a very similar contention was advanced and rejected in Public Utility Construction and Gas Appliance Workers, etc., v. Public Service Electric & Gas Co., 35 N.J. Super. 414, 419-421 (App. Div. 1955), certification denied. 19 N.J. 333 (1955), 11 *503 Rutg. L. Rev. 191 (1956). In support of their argument, plaintiffs cite Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1 (E. & A. 1935); cf. Goerke Kirch Holding Co. v. Union County Circuit Court, 14 N.J. Misc. 624 (Sup. Ct. 1934), affirmed Goerke Kirch Holding Co. v. Goerke Kirch Co., 116 N.J.L. 427 (E. & A. 1936). However, in Public Utility Workers the court distinguished the case on the ground that it was of the very essence of the arbitration agreement in Goerke Kirch Co., that the award be made by a specified date. It followed that after that date had passed, the right to compel arbitration ceased. Here though the parties did agree that "requests will be made of the arbitrators to make a speedy determination" and further, that "the arbitration shall begin and carry on as expeditiously as possible," still no mandatory time limit was imposed upon the arbitrators. Accordingly, Goerke Kirch Co. is not controlling on the issues presented.
It is true that in Public Utility Workers  which was a case where an award was vacated  the decision rests upon a particular statutory provision, namely, the following (N.J.S. 2A:24-8):
"When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."
In the instant case there has been no award, and hence the statute is inapplicable. However, the whole arbitration act aims to make an arbitration agreement a binding instrument (N.J.S. 2A:24-1) and also to authorize the court to effectuate it, and hence to compel arbitration under the circumstances presented. Indeed, N.J.S. 2A:24-3 by its terms empowers the court to "direct that the arbitration proceed" where one of the parties fails to perform the agreement to arbitrate.
It must be borne in mind that the very design of a contract of arbitration is to secure an effective award from the arbitrators to be appointed. See Public Utility Workers, 35 N.J. Super., at page 420. Where arbitrators resign before *504 making that award, the contract remains unsatisfied. Accordingly, in order to effectuate the agreement, the court may on their resignation require a matter to be submitted to new arbitrators.
The various provisions of the Arbitration Act lend themselves to this view. Thus, for example, N.J.S. 2A:24-8 enables a court to vacate an award and order a rehearing by the arbitrators where they "imperfectly executed their powers." With that provision in view, are we to say that the Arbitration Act envisages an end to arbitration when the arbitrators decline to execute their powers? Does the act contemplate that the whole arbitration process is to be frustrated by the resignation of the arbitrators? The construction we have put upon the act, we think, is amply supported by modern notions favoring arbitration. Eastern Engineering Co. v. City of Ocean City, 11 N.J. Misc. 508, 510 (Sup. Ct. 1933).
Such authorities as we have found sustain the position taken above. Thus in Pierce Steel Pile Corp. v. Flannery, 319 Pa. 332, 179 A. 558, 560 (Sup. Ct. 1935), it was held that under the Pennsylvania Arbitration Act the court had power to resubmit a matter to arbitration even though the act apparently did not provide for resubmission under the circumstances presented. So, too, it has been held in Pennsylvania that where arbitrators declined to act, the court may appoint a substitute, notwithstanding that there is no statutory provision there, expressly dealing with the contingency. Kuzmen v. Kamien, 139 Pa. Super. 538, 12 A.2d 471, 473 (Super. Ct. 1940); J.M. Davis Co. v. Shaler Tp., 332 Pa. 134, 2 A.2d 708 (Sup. Ct. 1938). Note, too, that while the statute in force in various jurisdictions with respect to a case where an award is vacated authorizes a "rehearing by the arbitrators" (N.J.S. 2A:24-8), nevertheless, in appropriate circumstances and in keeping with a liberal construction of the statute, it is held that new arbitrators may be appointed where an award is vacated. Hyman v. Pottberg's Ex'rs, 101 F.2d 262, 266 (2 Cir. 1939, Learned Hand, J.) construing 9 U.S.C.A. § 10(e), a statutory provision like *505 ours; cf. Hauck v. Rochester Taxicab Co., 127 Misc. 759, 217 N.Y.S. 2 (Sup. Ct. 1926); cf. Oltarsh v. Classic Dresses, 255 App. Div. 532, 7 N.Y.S.2d 859, 864 (App. Div. 1938), for the later New York statute.
It is our conclusion, therefore, that the court has the power to compel the parties to resubmit a matter to arbitration where arbitrators resign. However, it is discretionary with the court whether or not to exercise the power. Cf. McKeeby v. Arthur, 7 N.J. 174, 179, 181 (1951); Regorrah v. Vigneau, 335 Mich. 35, 55 N.W.2d 164, 166 (Sup. Ct. 1952); Annotation, 104 A.L.R. 710, 720 (1936). Public Utility Workers is not to the contrary; the statute under which the court was there acting, N.J.S. 2A:24-8, is too explicit as to the matter of discretion.
Plaintiffs seem to put forward three reasons why the court should not, in the exercise of its discretion, compel arbitration in the instant case. First, they make some attempt to charge the defendant with the arbitrators' failure to make an award, and in that connection they refer us to the following paragraphs of an affidavit made by the arbitrator selected by them:
"It was my impression throughout my examination and investigation that the defendant was consistently uncooperative and continually sought to delay and hinder the proceedings and obscure the facts of the matter in issue. (Italics added)
The arbitration proceedings were brought to a close at the instance and request of Peter Cronk, who was chosen as arbitrator by the defendant."
It is to be noted, however, that the Chancery Division did not rely on this affidavit. On the contrary, in its opinion it sets out in full a letter from the arbitrators to the court, which states that neither party was "accountable for our inability to reach a conclusion."
Second, plaintiffs claim that new parties and issues should be added to the original complaint in this cause (which embraces only a portion of the matters submitted to arbitration). However, neither in plaintiffs' brief nor in the oral argument did they suggest what parties or issues *506 should be added to those referred to in the agreements to arbitrate. The nonjoinder of parties or issues may at times be a factor in determining whether or not to compel a resubmission of the cause to arbitration. On the other hand, as said in Rosenthal v. Berman, 14 N.J. Super. 348, 352 (App. Div. 1951), a party who has entered into a bargain to arbitrate should not be allowed to avoid "his bargain by dragging in extraneous issues and unnecessary parties." It might be added, in passing, that the court has the power on the remand of this case to join as parties to an order compelling arbitration, the four corporations which were parties to the stipulation to arbitrate.
Third, plaintiffs claim, and the Chancery Division was of a like opinion, that the letter of the arbitrators to the court indicated that a resubmission would serve no useful purpose. We see nothing in the letter sustaining that view. Nevertheless, the Chancery Division does seem to anticipate that further arbitration would be futile.
The process of arbitration is heavily dependent on the character of the umpire who makes the determination. In the very nature of things he must be attuned to the ethical or legal considerations involved in a just valuation of the respective claims. And, more than that, in complicated matters he must have the perception and diligence to clarify and unravel the issues, and the force of mind to resolve every phase of them according to their desserts. However, the Chancery Division in exercising its discretion as to whether or not to order a second submission to arbitration need not concern itself with the merits, in general, of the arbitration process. The Legislature has spoken on that matter; the law favors the process. We think that under the circumstances presented here the court clearly should have, in the exercise of its discretion, ordered arbitration in pursuance of the defendant's motion for that purpose.
It might be well to add that under N.J.S. 2A:24-5 the Chancery Division, on the "lapse or failure" of the plaintiff to designate an arbitrator, within such time as the Division may specify on a remand of this case, has an ample power *507 of appointment to effectuate the arbitration. Cf. Weller v. Zucker, 127 N.Y.S.2d 74 (Sup. Ct. 1953), a case in which the arbitrators resigned and which deals with N.Y. Civil Practice Act, § 1452, on which N.J.S. 2A:24-5 was modeled (Phillips, "The Paradox in Arbitration Law: Compulsion As Applied to a Voluntary Proceeding," 46 Harv. L. Rev. 1258, 1262 (1933)); cf. Ballas v. Mann, 82 N.Y.S.2d 426 (Sup. Ct. 1948), construing the term "lapse." Cf. Issifoglu v. Coumantaros, [1941] 1 K.B. 396, 401 (C.A.), approving the opinion of Humphreys, J.
The present appeal also calls upon us to deal with an order of the Chancery Division directing defendant to turn over to plaintiffs three trucks. However, in view of our conclusion that the arbitration agreements are still in effect and, further, that the issues specified therein should be submitted to new arbitrators, this order must fall. The parties' claims to the trucks constituted a part of the controversy which is to be arbitrated, and under the arbitration agreement, it was provided that
"all litigation be held in status quo and no proceedings [be] taken by either of [the parties] against the other pending the final determination of the arbitrators."
Reversed.