44 N.J. Super. 316 (1957)
130 A.2d 421
THE PUBLIC UTILITY CONSTRUCTION AND GAS APPLIANCE WORKERS OF THE STATE OF NEW JERSEY, LOCAL NO. 274, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY, A.F.L., AN UNINCORPORATED ASSOCIATION, AND THOMAS MOORE, EDWARD SMITH AND GEORGE MOORE, PLAINTIFFS,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 15, 1957.
*318 Mr. Jacob Friedland, attorney for plaintiffs.
Mr. Luke A. Kiernan, Jr., attorney for defendant.
DUFFY, J.C.C. (temporarily assigned).
The plaintiffs, a labor union and three members thereof, by order to show cause, seek an order from this court directing that the subject matter of a dispute between the named individual plaintiffs and the defendant company be remanded to an arbitration board for settlement pursuant to the rules of the State Board of Mediation and the contract of employment between the parties. This action is brought under the provisions of N.J.S. 2A:24-3.
The pleadings and exhibits indicate that a contract of employment previously executed between the union plaintiff and the defendant company terminated on July 1, 1953. While negotiations for a new agreement went on between the parties, the members of Local No. 274 fulfilled and continued working in the various jobs and assignments of their employment with defendant.
The negotiations for a new contract proved unsuccessful. On November 28, 1953 the union called a strike. All members of the union, including the three individual plaintiffs, immediately ceased work in answer to the call.
On December 23, 1953 Thomas Moore, Edward Smith and George Moore, plaintiffs in this proceeding, were arrested by the Palisades Park police on a criminal charge. They were thereupon suspended from their jobs by defendant *319 company. An indictment was returned against them by the Bergen County grand jury on May 13, 1954 in two counts, one, charging breaking and entering, and the other, burglary. They were tried on January 25 and 26, 1955, and the jury returned a verdict of not guilty of both counts in favor of the three defendants (in the Criminal Division), Thomas Moore, Edward Smith and George Moore.
Meantime, on December 29, 1953, the strike between the union and defendant company was amicably settled. Part of the strike settlement agreement provided that the propriety of the suspension of the individual plaintiffs be submitted to arbitration in accordance with the rules of arbitration of the New Jersey State Board of Mediation.
Pursuant to the above proviso a hearing was afforded the three named plaintiffs before an arbitration board, May 3, 1955, to determine the merits of their suspensions. On May 11, 1955 the board made its findings that the suspension of the three named was just and proper. However, at the close of the hearing on May 3 certain representatives of the defendant company verbally advised the named individual plaintiffs that their conduct, the subject matter of the criminal proceedings, justified their discharge by the company; that from that moment on they could and should consider themselves discharged by the company.
The dismissal was confirmed by letters to each of the individual plaintiffs, dated May 4, 1955. The language of each letter was verbatimly similar. I quote the letter to Thomas Moore:
"Dear Sir:
This letter is in reply to your application for reinstatement in our employ made again on May 3, 1955.
Your representative previously has been informed that in our opinion your actions of December 23, 1953 were such as to disqualify you for employment with this Company. We advised him that under no circumstances would we reinstate you. Your recent application does not change the situation, and our decision not to reinstate you stands.
 Very truly yours,
 (s) H.W. Nicholson
 General Superintendent of Distribution
 Gas Department."
*320 Under date of May 6, 1955, on the stationery of the labor union, the following reply was directed to the company:
 "Mr. Harold Emerson
 District Superintendent
 Bergen Gas Distribution
 Englewood District
 Public Service Electric and Gas Company
 Englewood, New Jersey
Dear Mr. Emerson:
Pursuant to Article IX, Section 5, Subdivision (d) of the Labor Agreement in effect between your Company and this Local Union we wish to advise as to the existence of grievances relating to the discharges of Thomas Moore, Edward Smith and George Moore.
The Local Union and the individuals involved protest these discharges as not being for just cause and request the use of the grievance procedure outlined in Article IX of the contract in an endeavor to amicably adjust or settle these disputes in the simplest and most direct manner.
 Very truly yours,
 (s) Frank De Nike
 Business Manager."
In its answer to the verified complaint filed by the plaintiffs in these proceedings, defendant has set up four separate defenses, namely: (1) that defendant has fully complied with the only agreement existing between the parties to arbitrate in relation to the status of the three individual plaintiffs; (2) that the issue is not arbitrable since the three individual plaintiffs were admittedly engaged in unlawful conduct by sabotaging defendant's property and facilities during the course of the strike; (3) that there is no agreement existing between the parties to arbitrate the issue of defendant's failure to reinstate the three individual plaintiffs; and (4) that the matter in dispute is exclusively within the jurisdiction of the National Labor Relations Board.
Points (1) and (3) can be considered together. Defendant contends that at the time of suspension of the three named plaintiffs (December 23, 1953) the contract of employment between the parties had expired and was non-existent and thus no rights or benefits could possibly *321 accrue to the plaintiffs thereunder. (A state of strike existed between the parties at the time mentioned). It has been repeatedly held that a strike does not constitute a quitting or abandonment of employment. It does not terminate the relationship of employer-employee between the parties. Kennedy v. Westinghouse Elec. Co., 29 N.J. Super. 68 (App. Div. 1953); American Federation of Hosiery Workers v. Pohatcong Hosiery Mills, 13 N.J. Super. 268 (App. Div. 1951). Moreover, the agreement which terminated the strike and which was executed between the committee representing the union and C.R. Dewhurst on behalf of defendant company, under date December 29, 1953, specifically provided:
"The parties have met to further negotiate a settlement of the strike. The following proposals of settlement have been agreed upon between the committee representing the Union and the representatives of Public Service Electric and Gas Company. * * *
1. The Agreement which expired July 1, 1953 will be amended as follows:

* * * * * * * *
E. All employees, except as hereinafter provided, shall be returned to work on December 30, 1953 at their regular reporting time.
F. Francis C. Juillet may have the propriety of his discharge submitted to Arbitration in accordance with the rules of Arbitration of the New Jersey State Board of Mediation. All of the preliminary steps provided for adjustment of disputes in the labor agreement are waived by both parties. The same shall apply to the suspension of Thomas Moore, George Moore and Edward Smith. Requests for such arbitration must be filed 10 days from date hereof.
H. Both parties agree that all differences between them have been settled on the basis above mentioned and that there shall be no claim or litigation between the Company and the Union as a result of the strike.
I. All other terms and conditions of the Agreement between the parties which expired July 1, 1953 shall be effective to June 30, 1954."
A reading of the above agreement, subsequently approved by vote of the union membership, plainly shows the intent of the parties to treat the named individual plaintiffs as employees of the company who occupied a suspended status at the time of its execution. But, more importantly, the agreement provided that the terms, provisions and conditions *322 of the employment contract should be retroactively effective to July 1, 1953, the termination date of the former contract.
Article IX of the employment contract comprises the grievance and arbitration section and outlines the procedure to be followed "should any dispute or difference arise between the Company and the Union or its members as to the interpretation, application or operation of any provision of this agreement, both parties shall endeavor to settle same in the simplest and most direct manner." It should be specifically noted that the above quoted section governs and controls "any dispute or difference" arising between the parties concerning "the interpretation, application or operation of any provision" of the employment agreement. (Italics supplied)
It is my conclusion that defenses (1) and (3) of defendant's answer are not well taken and should be dismissed. This is especially so because paragraph 5(d) of the same section quoted above provides:
"(d) Any employee disciplined or discharged by the Company may use the above grievance steps, including arbitration, for hearing on his case. Grievances concerning such matters shall be filed in writing with the District Superintendent within 72 hours of the disciplining or discharge, or shall be deemed waived."
Under special defense (2) defendant contends that it was completely justified in summarily dismissing the individual plaintiffs because they "were admittedly engaged in unlawful conduct and unprotected activity during the course of the strike and sabotaged defendant's property and facilities." In this connection I have read the transcript of the testimony of Thomas Moore, Edward Smith and George Moore in the criminal trial (marked here Ex. D-1) and find admissions by the latter two that they disconnected and removed ten gas meters, the property of defendant company, from an apartment house in Palisades Park, New Jersey on December 23, 1953. There is also an admission by Thomas Moore of his involvement in the transaction, but he testified that his participation was limited to aiding and abetting the carrying away or asportation of the gas meters. The testimony *323 of George Wellinghorst, a police officer of Palisades Park, indicated that he arrested the three individuals mentioned above at the scene and in the course of the described activity. His examination of an automobile parked outside the premises disclosed four gas meters stored in the rear of the car and six more meters in the trunk compartment. Edward Smith admitted to ownership of the described motor vehicle.
Under our system of jurisprudence, the weight and sufficiency of the evidence and the credibility of witnesses is a matter strictly within the province of a jury. I must take judicial notice that, despite the admissions of culpability by the three defendants in the criminal trial, the jury returned a verdict of not guilty.
The company here contends that it is entitled to exercise its right of discharge for admitted acts of sabotage by employees, citing the opinion of the United States Supreme Court in N.L.R.B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 496, 83 L.Ed. 627 (1938), wherein Chief Justice Hughes stated:
"We are unable to conclude that Congress intended to compel employers to retain persons in their employ regardless of their unlawful conduct  to invest those who go on strike with an immunity from discharge for acts of trespass or violence against the employer's property, which they would not have enjoyed had they remained at work."
The same principle was expressed by the court in Garment Workers Union v. N.L.R.B., 99 U.S. App. D.C. 64, 237 F.2d 545, 550 (C.A.D.C. 1956) that "courts have without exception adhered to the principle that proof of individual wrongdoing is a prerequisite to disqualification for reinstatement and back pay. * * * We agree that the Board has no authority to compel reinstatement of employees who directly or indirectly participate in, authorize or ratify misconduct." Contra, plaintiffs cite the opinion of the court in Post Publishing Co. v. Cort, 134 N.E.2d 431, 434 (Mass. *324 Sup. Ct. 1956), wherein the court refused to enjoin arbitration of an issue concerning the propriety of the discharge of certain employees. Justice Wilkins stated:
"We see no occasion to interrupt the normal course of the arbitration proceedings voluntarily adopted [in the employment contract] by the parties themselves. * * * Parties may raise before an arbitrator a challenge to his jurisdiction and, without waiving that question, may proceed to a hearing on the merits * * * And in the absence of a clear expression of congressional intent, we shall not assume a lead in rendering largely useless a common method [arbitration] of expediting settlement of a labor controversy and a method which is approved in congressional declaration of policy. * * * We cannot believe that Congress intended to create a no man's land where voluntary arbitration is barred and the national labor relations board may be too overburdened to enter."
The pleadings and affidavits in the case at bar raise a genuine issue as to a material fact. On the one hand, defendant company contends that it is entitled as a matter of right to discharge employees who admittedly committed acts of sabotage against company property. Plaintiffs, on the other hand, insist that the company cannot summarily discharge them without first affording them a hearing before an arbitration board pursuant to the terms of the employment contract. I am not called upon nor will I express my views on the propriety or justification of the discharge of the individual plaintiffs. Instead, it is my conclusion that this factual issue should be referred to the proper forum.
The fourth separate defense concerns the jurisdiction of the National Labor Relations Board over the issue under review. To bolster its contention, defendant points out that individual plaintiff, Edward Smith, on May 18, 1955 filed a complaint with the board charging that the defendant company was guilty of unfair labor practices by its refusal to reinstate him to his job. The complaint was voluntarily withdrawn by Smith, on June 15, 1955, without prejudice. In answer thereto Smith has filed a supplemental affidavit wherein he maintains that he labored under the erroneous impression that his discharge by the company comprised an unfair labor practice by his employer.
*325 The Labor Management Relations Act of 1947, 29 U.S.C.A., sec. 158, provides as follows:

"§ 158 Unfair Labor Practices
(a) It shall be an unfair labor practice for an employer:
(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in Section 157 of this act."

"§ 157. Right of Employees * * *
Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 158(a)(3)."
The individual plaintiffs concede that their alleged acts of sabotage were not protected activities as defined in section 157 of the law quoted above; hence they contend they cannot possibly charge the defendant employer with an unfair labor practice within the jurisdiction of the National Labor Relations Board. Moreover, they are debarred from filing a complaint with the board under section 160 of the act because more than six months has elapsed since the purported act was committed.
It is my opinion that the redress of an employee who has been discharged by defendant company is specifically provided for under paragraph 5 (d) of Article IX of the employment contract wherein "An employee disciplined or discharged by the Company may use the above grievance steps, including arbitration, for hearing on his case." (Italics supplied) Adequate relief is thus afforded a discharged employee without resort to the N.L.R.B.
The grievance-arbitration section (Art. IV, par. 5(b)) of the employment contract provides, "The Arbitration Board shall consist of one member selected by the Company, one member selected by the Union and a third member to be selected by the Union and Company members. * * *"
*326 I will sign an order and judgment directing defendant company to submit to arbitration the issues of the propriety of the discharges of Thomas Moore, Edward Smith and George Moore. In reaching this decision, I am aware that "it is well settled law that arbitration is favored by the courts, that submission to arbitration is essentially a contract, that the parties are bound only to the extent of their contract and have a right to stand upon the precise terms thereof." Public Utility Const. & Gas Appliance Workers, etc. v. Public Service Co., 35 N.J. Super. 414 (App. Div. 1955); Goerke Kirch Co. v. Goerke Kirk Holding Co., 118 N.J. Eq. 1 (E. & A. 1935); Machine Printers Beneficial Ass'n of United States v. Merrill Textile Print Works, Inc., 12 N.J. Super. 26 (App. Div. 1951).
Moreover, our Appellate Division in a very recent case, Ench Equipment Corp. v. Enkay Foods, Inc., 43 N.J. Super. 500 (App. Div. 1957), has stated that "the whole arbitration act aims to make an arbitration agreement a binding instrument (N.J.S.A. 2A:24-1) and also to authorize the court to effectuate it, and hence to compel arbitration under the circumstances presented. Indeed, N.J.S.A. 2A:24-3 by its terms empowers the court to `direct that the arbitration proceed' where one of the parties fails to perform the agreement to arbitrate."
It is my conclusion that the terms of the employment contract require the submission of the issue of propriety of discharge of the named employees to the forum designated in the contract.